UNITED STATES of America,
Plaintiff-Appellee,

v.

Charles Demetrios BRAND,
Defendant-Appellant.

No. 76–3202.

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 4, 1977.

Stewart E. Parsons, Tallahassee, Fla., for defendant-appellant.

Nickolas P. Geeker, U. S. Atty., Pensacola, Fla., Clifford L. Davis, Asst. U. S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before WISDOM, GEE and FAY, Circuit Judges.

WISDOM, Circuit Judge:

Charles Demetrios Brand, the defendant-appellant, challenges his conviction after trial by jury for possession of cocaine hydrochloride with the intent to distribute the controlled substance in violation of 21 U.S.C. § 841. He contends that a 20-month delay between his allegedly criminal act and the indictment violated due process, as well as his statutory and constitutional rights to a speedy trial. He also argues that the district court should have suppressed evidence seized after the issuance of a search warrant. We reject both contentions and affirm the conviction.

## I.

On July 23, 1974, the Tallahassee Memorial Hospital sent an ambulance to 500 Laura Lee Drive to assist a drug overdose victim. The Tallahassee Police Department dispatched Officer George Greene to help the ambulance attendants. When Greene and the attendants entered the house, they found Charles Demetrios Brand lying unconscious on the floor of the living room. Greene testified that he saw hypodermic needles,[1] marijuana butts, and several pills in the living room. He also heard the ambulance attendant ask Brand's wife whether her husband was on drugs. She report-

edly responded that he had taken hard drugs.

Officer Wayne Crawley arrived at the house as Brand was placed in the ambulance. Mrs. Brand and one of the defendant's brothers went to the hospital. Another brother, David Brand, remained at the house with the policemen. Crawley also reported seeing hypodermic needles and pills in the living room when he first entered. He and Officer Greene then apparently walked into one of the bedrooms where they found more hypodermics, pills, powdered substances, and blood stains around a table and on a needle. Crawley said he did not investigate the scene further but instead called a narcotics investigator, Walter Beck to the scene.

Beck testified that numerous pills, pill bottles, injection bottles, and syringes were on the table in the living room of the house when he arrived. He spoke with David Brand, who said that his brother had probably reacted to the cocaine that they had been shooting. David also reportedly said that the cocaine was part of a shipment his brother had just received and stored in the attic of the house. Beck then called Sergeant George Greene, who directed that the house be secured and that Beck obtain a search warrant. Beck submitted the following affidavit to the magistrate to procure the warrant:

[Y]our Affiant received a call at home from the police dispatcher at 3:48 a. m. in reference to a drug overdose case at 500 Laura Lee Street. When your Affiant arrived at the above described location, he observed numberous [sic] items of narcotics and dangerous drugs in plain view inside the house. A variety of pills, prescription bottles, syringes, and other narcotic paraphernalia were also observed.

Your Affiant talked to David Brand, a guest at the above described house, who advised that there was a large amount of cocaine located in the house that had been brought in from South America.

---

1. When Greene restated on cross examination what he saw when he entered the house, he omitted the needles. Given the flow of cross examination and the testimony of Officer Crawley who also saw hypodermic needles in the living room, the omission by Officer Greene is not significant.

Beck explained on cross examination that all of the items listed as in plain view were in the living room of the house, not in the bedroom. He asserted, however, that the bedroom could be seen from the living room.[2]

After the magistrate issued the warrant, the police found a pound to a pound and a half of cocaine in a thermos bottle in a clothes dryer. They also seized syringes, foreign currency, $10,670 in cash, and small quantities of cocaine.

The police arrested Charles Brand and his wife on July 23, 1974, for possession of the cocaine in violation of state law. After a state court judge suppressed the seized evidence, the prosecutor nolle prossed the state charges. A federal investigation began during the autumn of 1975 and resulted in the return of an indictment on March 11, 1976, more than 20 months after the arrest under the state charges but within the period of the applicable federal statute of limitations.[3]

During the trial the district court refused to suppress the evidence seized under the warrant. At the conclusion of the Government's case, the court granted a motion for judgment of acquittal in favor of Mrs. Brand. Her husband was found guilty by the jury and later sentenced to 10 years in prison.

## II.

Brand argues first that the 20-month preindictment delay requires reversal of his conviction and dismissal of the charges against him under either Rule 48(b) of the Federal Rules of Criminal Procedure[4] or the speedy trial provision of the sixth amendment[5] or the due process clause of the fifth amendment.[6]

■ Rule 48(b) applies only to a preindictment delay that occurs after the defendant "has been held to answer to the district court". In this case, however, the defendant was not held to answer on the charges for which he was convicted in the district court until after the indictment. The defendant did not face arrest by federal authorities before the indictment; the state arrest alone did not trigger the Rule because it did not require Brand to answer to the federal district court. Thus, dismissal is not required by Rule 48(b) when a federal arrest has not occurred and the grand jury has returned the indictment within the period of the applicable statute of limitations. *United States v. Giacalone*, 6 Cir. 1973, 477 F.2d 1273; *United States v. Grayson*, 5 Cir. 1969, 416 F.2d 1073, *cert. denied*, 1970, 396 U.S. 1059, 90 S.Ct. 754, 24 L.Ed.2d 753, *rehearing denied*, 397 U.S. 1003, 90 S.Ct. 1114, 25 L.Ed.2d 415, and 399 U.S. 917, 90 S.Ct. 2191, 26 L.Ed.2d 576.

■ The defendant's sixth amendment claim also lacks merit because he was not subjected to a federal arrest until after the federal indictment. *United States v. Marion*, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, held that the speedy trial provision of the sixth amendment provides a person no protection until he becomes an

2. Beck acknowledged that Officer Greene had gone into the bedroom before Beck arrived. According to Beck, David had taken Greene to show him currency that was later seized pursuant to the search warrant.

3. 18 U.S.C. § 3282 (1970), which states:
   Except as otherwise provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.

4. Rule 48(b) states in part:
   If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has

been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

5. The sixth amendment to the Constitution states in part:
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . .

6. The fifth amendment to the Constitution states in part:
   No person shall be . . . deprived of life, liberty, or property, without due process of law . . . .

accused by arrest or indictment. *Accord, United States v. Lovasco,* —— U.S. ——, 97 S.Ct. 2044, 52 L.Ed.2d 752, 1977. The Court recognized that any delay from the date of the criminal act might impair defense preparation. It might also prejudice the Government's case. Yet the Court concluded that the amendment was directed toward other interests:

> [T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends.

404 U.S. at 320, 92 S.Ct. at 463.

Here the United States did not visit the evils identified in *Marion* upon the defendant until the return of the bill of indictment. Consequently, the Government did not infringe the defendant's sixth amendment rights by waiting 20 months to charge him. *See United States v. Grayson,* 5 Cir. 1969, 416 F.2d 1073, 1076–77.

■ A preindictment delay can violate the due process clause of the fifth amendment even where the defendant has not been arrested or otherwise accused before the indictment. In *Marion* the Court recognized this possibility when it noted the Government's concession that due process would require dismissal when an intentional tactical delay by a prosecutor substantially prejudiced a defendant. *United States v. Lovasco,* —— U.S. ——, 97 S.Ct. 2044, 52 L.Ed.2d 752, 1977, recently reaffirmed the *Marion* holding. In each case, however, the Court noted that the due process determination would vary from case to case. *Id.* at ——, 97 S.Ct. 2044; *United States v. Marion,* 404 U.S. at 324, 92 S.Ct. 455. Brand argues in this case that the 20-month delay substantially prejudiced his ability to pre-

pare his defense. In particular, he submits that the death of his brother David, the only family member who remained at the house during the search, prevented an effective challenge by the defense to the admission into evidence of the seized cocaine.

The Supreme Court has held that *Marion* requires a showing of actual prejudice. *United States v. Lovasco,* —— U.S. at ——, 97 S.Ct. 2044; *see United States v. McGough,* 5 Cir. 1975, 510 F.2d 598; *United States v. Beckham,* 5 Cir. 1975, 505 F.2d 1316, *cert. denied,* 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104; *United States v. Zane,* 5 Cir. 1973, 489 F.2d 269, *cert. denied,* 1974, 416 U.S. 959, 94 S.Ct. 1975, 40 L.Ed.2d 310. In *McGough,* which is particularly applicable to the present case, the defendant argued that the death of six witnesses had prejudiced his cause. He contended that several witnesses had firsthand knowledge of the transactions involved and that others could impeach Government witnesses. Although the Government vigorously contested the asserted prejudice, the district court found a due process violation. This Court remanded the case because the district court had not considered the factual dispute over whether the testimony of the witnesses was actually important to the defense.

■ In this case the Government stipulated before the district court that David Brand's testimony could be helpful to the defense. On reviewing the record, however, David's presence would not seem to add significantly to the defendant's arguments. The conviction was based primarily on the cocaine that the police seized in Brand's residence. Because David remained at the house during the search, he could testify as to the circumstances relating to the discovery of the cocaine. His testimony could defeat the validity of the warrant only if he could convince the district court that he had not told Officer Beck about the cocaine or that the marijuana butts, hypodermic needles, and pills were not in plain view in the living room when Officers Greene and Crawley arrived. See Section III of this opinion. But neither factual proposition is disputed; there is

only uncertainty about whether David consented to a search of the bedroom and whether additional material from the bedroom was taken to the living room by the police before they procured the warrant. Because the validity of the warrant does not depend on material that might have been found in the bedroom, the defense is not prejudiced by the unavailability of David and therefore by the preindictment delay.[7]

## III.

The Tallahassee police seized the cocaine and narcotics paraphernalia pursuant to a search warrant. The validity of the warrant, and therefore of the seizure, depends on whether the police legally entered the house before the warrant was issued and on whether the affidavit contains sufficient information to support the finding of probable cause.

The defendant argues first that only Officer Greene entered the house legally. When he assisted the ambulance attendants, Greene's presence in the house was permitted by the exigent circumstance of the medical emergency. According to Brand, however, officers who entered subsequently cannot justify their presences with the same exigent circumstance because the medical emergency ended prior to their arrivals.[8] Consequently, he suggests that Sergeant Greene and Officers Beck and Crawley illegally entered the house, thereby tainting the information they gathered for the probable cause affidavit.

■■ We reject the defendant's contention because it misconceives the nature of the fourth amendment interest at stake. The amendment protects the citizen against invasion of privacy. Once that interest is invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy to the extent of the invasion. As this Court has held repeatedly, additional investigators · or officials may therefore enter a citizen's property after one official has already intruded legally.[9] *E. g. United States v. Green*, 5 Cir. 1973, 474 F.2d 1385, 1390, *cert. denied*, 414 U.S. 829, 94 S.Ct. 55, 38 L.Ed.2d 63; *United States v. Herndon*, S.D.Fla.1975, 390 F.Supp. 1017, *aff'd*, 5 Cir. 1976, 536 F.2d 1027; *see Steigler v. Anderson*, 3 Cir. 1974, 496 F.2d 793, 797–98, *cert. denied*, 419 U.S. 1002, 95 S.Ct. 320, 42 L.Ed.2d 277. Later arrivals may join their colleagues even though the exigent circumstances justifying the initial entry no longer exist. *Id.* Thus,

---

**7.** The parties argue in their briefs about whether *Marion*, as interpreted by this Court, requires the defense to show both actual prejudice and intentional tactical delay by the prosecutor before a due process violation may be found. The dispute is settled by *United States v. Lovasco*, —— U.S. ——, 97 S.Ct. 2044, 52 L.Ed.2d 752, 1977, which holds that prejudice alone "makes a due process claim concrete and ripe for adjudication". *Id.* at ——, 97 S.Ct. at 2048. Whether the claim is valid depends on the due process balancing between the extent of the actual prejudice and the governmental interests at stake. The opinion does not indicate that governmental interests not amounting to an intentional tactical delay will automatically justify prejudice to a defendant. On the contrary, the Court engages in a sensitive balancing of the government's need for an investigative delay in *Lovasco* against the prejudice asserted by the defendant.

The analysis in *Lovasco* is consistent with most Fifth Circuit cases. *See United States v. McGough*, 5 Cir. 1975, 510 F.2d 598; *United States v. Beckham*, 5 Cir. 1975, 505 F.2d 1316; *United States v. Zane*, 5 Cir. 1973, 489 F.2d 269. Only *United States v. Butts*, 5 Cir. 1975,

524 F.2d 975, seemed to require a showing of both actual prejudice and intentional delay. *Lovasco* indicates that such a requirement misreads *Marion*, which stated:

> We need not, and could not now, determine when and in what circumstances actual prejudice resulting from preaccusation delay requires the dismissal of the prosecution.

*United States v. Marion*, 1971, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481. According to the Supreme Court, that statement remains true today. *Lovasco*, —— U.S. at ——, 97 S.Ct. 2044. Clarity will come only on a case-by-case basis.

**8.** Officer Crawley, the second policeman on the scene, arrived as Brand was being placed in the ambulance. At that point a medical emergency no longer existed in the house.

**9.** Of course, the later officials must confine their intrusion to the scope of the original invasion unless a warrant or one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search.

the validity of the affidavit is not vitiated by the late entry of the affiant and the other policemen.

■ The defendant next argues that the affidavit did not contain sufficient information to justify a finding of probable cause for the search. He pointed out that the information as to the cocaine in the house depends on the hearsay assertion by David Brand that the shipment from South America was located there. The defendant submits that the district court should not have relied on this tip alone, because of its being hearsay. *Aguilar v. Texas*, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. This point is well taken. The affidavit contains no information with which the magistrate could independently evaluate the reliability of David, the informant. *See id.* at 114, 84 S.Ct. 1509. The document does not, for example, identify David as the defendant's brother. The magistrate could not then presume that David would not falsely implicate a family member in a crime. The affidavit also does not permit a finding that David provided the tip against his own penal interest. There is no indication that David participated in any criminal activity or illegally possessed the cocaine; the document states only that he was a guest in the house. *Compare United States v. Barfield*, 5 Cir. 1975, 507 F.2d 53, *cert. denied*, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105; *Ludwig v. Wainwright*, 5 Cir. 1970, 434 F.2d 1104. Consequently, David's hearsay assertion cannot support the search warrant by itself.

■ Despite the inadequacy of the affidavit, the district court properly issued the warrant in this case because the hearsay was corroborated by an independent police investigation. *Spinelli v. United States*, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; *Polanco v. Estelle*, 5 Cir. 1975, 507 F.2d 81, *cert. denied*, 423 U.S. 854, 96 S.Ct.

101, 46 L.Ed.2d 78; *Lopez v. United States*, 5 Cir. 1966, 370 F.2d 8. As the Court explained in *Gonzales v. Beto*, 5 Cir. 1970, 425 F.2d 963, *cert. denied*, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189, an informer's tip may be buttressed either by independent observations substantiating the details of the tip or by independent observations of activity reasonably arousing suspicion itself. *Id.* at 969. Regardless of the approach, the tip and the corroboration must constitute probable cause to believe that the object of the search was on the premises to be examined. The information must raise more than a "reasonable suspicion" in the magistrate's mind to ensure an effective check on the competitive zeal of law enforcement officials. *Id.* at 968, *quoting Johnson v. United States*, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440. Here, although the corroboration does not confirm the details of the tip, it does raise independently an inference that narcotics were on the premises. When combined with the tip, this inference provides a reasonable basis for the magistrate to conclude that the house probably contained cocaine.

■ We have reached this conclusion even though we omitted consideration of several items of contraband listed in the affidavit. By comparing the testimony of Greene and Crawley with that of Beck, the inference arises that the first two officers brought several items into the living room from the bedroom before Beck arrived. Unless the materials in the bedroom were in plain view from the living room, however, their seizure was illegal.[10] The medical emergency justified the officers' presence only in the living room. Brand retained a reasonable expectation of privacy in other areas of the house. Infringement of that expectation requires the suppression of any evidence acquired thereby, including its use to secure a search warrant.[11] *Alder-*

---

**10.** The record does not clearly indicate whether the materials that probably came from the bedroom were in plain view from the living room. If the validity of the warrant depended on the inclusion of these articles in the affidavits, we would remand the case to the district court for further factual findings on the plain view issue.

The remand is not required, however, because the affidavit includes sufficient corroboration without the items.

**11.** We have excluded from the consideration the listing in the affidavit of narcotics, dangerous drugs, prescription bottles, and narcotic paraphernalia.

*man v. United States*, 1969, 394 U.S. 165, 178–79, 89 S.Ct. 961, 969, 22 L.Ed.2d 176, 190, *rehearing denied, Ivanov v. U. S.*, 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475. Consequently, we have considered only the items that Greene and Crawley said were in plain view when they entered the living room: hypodermic needles, marijuana butts, and pills. These items, when considered with the tip and the occurrence of a drug overdose emergency on the premises, support the magistrate's probable cause finding.

The judgment of the district court is AF-FIRMED.