In the Matter of the Execution of Search Warrants Conducted on March 5, 1980 Frank P. BALISTRIERI, et al., Movant,

v.

UNITED STATES of America, Respondent.

Nos. 80–34M through 80–42M.

United States District Court,
E. D. Wisconsin.

June 4, 1981.

---

Special Agent for the Federal Bureau of Investigation, this Court issued search warrants authorizing federal strike force agents to search the following:

1. the residence of Frank P. Balistrieri, located at 3043 North Shepard Avenue, Milwaukee;

2. the office of John Balistrieri, located on the first floor of the Shorecrest Hotel, 1962 N. Prospect Avenue, Milwaukee;

3. the bookkeeping and records office, located on the first floor of the Shorecest Hotel, 1962 N. Prospect Avenue, Milwaukee;

4. the law office of John and Joseph Balistrieri, located at 212 W. Wisconsin Avenue, Milwaukee;

5. the offices of Alioto Distributing, Inc., H&G Amusement Company and Dentice Amusement, located at 1504 E. North Avenue, Milwaukee;

6. the office and area in and around the cash register at La Scala Restaurant, located at 323 W. Wells Street, Milwaukee;

7. the residence at 808 E. Brady Street, Milwaukee; and

8. the person of Salvatore Anthony Librizzi.

On March 5, 1980, after considering an oral affidavit of Agent De Marco, this Court also issued a search warrant for the safes in the bookkeeping and records office located on the first floor of the Shorecrest Hotel, 1962 N. Prospect Avenue, Milwaukee. That day, acting pursuant to the search warrants, federal agents searched the locations identified above. During the searches, agents seized business records, other documents and $200,000.00 in cash.

Stephen M. Glynn, Shellow & Shellow, Milwaukee, Wis., for movants.

Douglas P. Roller, U.S. Dept. of Justice, Chicago, Ill., for respondent.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On March 4, 1980, after considering affidavits submitted by J. Michael De Marco,

On March 27, 1980, Frank P. Balistrieri, Joseph P. Balistrieri, John J. Balistrieri, La Scala Restaurant, Alioto Distributing, Inc., H&G Amusement Co., Dentice Amusement Co. and Leonardo's Pasta House filed a motion, pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, for the return and suppression of the property seized during the searches. At the time

they filed their motion, movants were unaware of the contents of the affidavits upon which the warrants were based.

On June 9, 1980, the Court found that the then-existing facts and circumstances no longer required the sealing of the affidavits and ordered the affidavits be unsealed. It further ordered a verbatim transcript of the original tape recording of the proceedings relating to the March 5, 1980 search warrant be filed with the Clerk of Court's office.

Following the unsealing of the affidavits, the Court requested the movants to submit the arguments supporting their motion with more particularity.[1] In accordance with the Court's request, movants filed their renewed motion for return of property on February 17, 1981. The Government responded on April 6, 1981. Briefing was finally completed on April 30, 1981, when the movants filed their reply brief.

In their motion for return of property, movants challenge both the reliability of the informants whose information is contained in Agent De Marco's affidavits and the credibility of that information itself. Specifically, movants challenge the reliability of informant Fratianno and the credibility of the information supplied by confidential source number two, confidential source number three, and Fratianno. In addition, movants contend no probable cause existed for believing evidence of alleged illegal activity would be found at several of the sites searched.

## LEGAL STANDARD

The standard for determining whether information supplied by an informant is sufficient to support a finding of probable cause was laid out in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In *Aguilar*, a search warrant had issued upon an affidavit of police officers who swore only that they had "received reliable information from a credible person and do believe" that narcotics were being illegally stored on the described premises. Although the Supreme Court recognized the constitutional requirement of probable cause could be satisfied by hearsay information, it held the affidavit was inadequate for two reasons. First, the application failed to set forth any of the underlying circumstances necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were where he said they were. Second, the officers making the affidavit did not attempt to support their claim that their informant was credible or his information reliable. 378 U.S. at 114, 84 S.Ct. at 1513.

In *Spinelli*, a search warrant had issued upon an affidavit of an FBI agent which indicated, in essence, the following: the defendant had been observed on several occasions going to a certain apartment; a check with the telephone company disclosed there were two telephones in the apartment listed in the name of another person; the defendant was known to the affiant and law enforcement agents as a bookmaker; and the affiant had been informed by a confidential reliable source that the defendant was operating a handbook and accepting wagers and disseminating wagers via the telephone in the apartment.

The Court held that the information contained in the affidavit did not establish probable cause. 393 U.S. at 418, 89 S.Ct. at 590. In making that determination, the Court rejected the statements concerning the apartment and the two phone numbers because those statements reflected only innocent-seeming activity and data. The Court also rejected the statement that the defendant was "known" to the affiant and local law enforcement officials as a gambler because that statement was nothing more than a bald and unilluminating assertion of suspicion. Finally, although the Court rec-

---

1. Resolution of this motion was delayed to allow the Court to resolve the movants' motion for recusal. That motion was denied on September 23, 1980. 497 F.Supp. 1283 (E.D.Wis. 1980). Movants' application for a writ of mandamus ordering the Court's recusal was denied by the Seventh Circuit on October 15, 1980.

ognized that the informant's tip had a fundamental place in the warrant application, it held that the tip, standing alone, did not meet the *Aguilar* standard.

The Court went on, however, to indicate that a tip which fails to meet the *Aguilar* standard when standing alone, could meet that standard if corroborated by other independent information in the affidavit. To determine whether such a corroborated tip meets the *Aguilar* standard, the Supreme Court directed judicial officers considering affidavits supporting requests for search warrants to ask: "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar's tests without independent corroboration?" *Id.* at 415, 89 S.Ct. at 588.

Courts applying the *Aguilar/Spinelli* standard have held that corroborative evidence can be predicated on information from other sources, *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); or independent police investigation, *United States v. Brand*, 556 F.2d 1312 (5th Cir. 1977).

This Court has carefully reviewed the affidavits submitted by Agent De Marco to determine whether they support a finding of probable cause. The statements purporting to show the credibility and reliability of each informant and each informant's information have been examined. Based on that examination, the Court concludes each informant was credible. In addition, because all key information supplied by each informant was corroborated by information from other sources and, in many instances, by independent investigation, the Court finds that the information passes the *Aguilar/Spinelli* standard and supports a finding of probable cause.

## CREDIBILITY OF INFORMANTS

The De Marco affidavits set out the underlying circumstances which led De Marco to believe that informants Fratianno, confidential source number two and confidential source number three were reliable. The movants do not challenge the past reliability of either confidential source (movants' brief at p. 35); they do, however, challenge the reliability and credibility of James Fratianno.

Mr. Fratianno furnished information to Agent De Marco on November 23, 1979. Agent De Marco considered Mr. Fratianno a reliable informant because "Fratianno is an admitted boss of a west coast Organized Crime Family." (Master affidavit at p. 8).

The movants argue that Mr. Fratianno's status as an admitted boss of a west coast organized crime family did not render him reliable. Although they acknowledge that admissions against penal interests are considered reliable, *United States v. Carmichael*, 489 F.2d 983, 986 (7th Cir. 1973) (*en banc*), they maintain Mr. Fratianno's admitted status is not a federal offense and thus cannot be considered an admission against penal interest.

■ The Court does not agree. Even though Mr. Fratianno did not make any specific admission against penal interest, his general admission that he is involved in organized crime enhances his reliability for that admission greatly increases his chances of being prosecuted for his past activities. Accordingly, the Court finds informant Fratianno reliable and credible.

## RELIABILITY OF INFORMATION

The movants' major challenge is to the underlying circumstances upon which the informants based their conclusions. They argue there is no allegation by any informant that can be linked to a specific credible source.

According to the master affidavit, confidential source number two obtained his information through his personal associations, observations, and statements made by members of the organized crime element. He advised that Frank P. Balistrieri is the head of the La Cosa Nostra in Milwaukee and that he reports directly to Joseph Auippa, head of the Chicago La Cosa Nostra. He further advised that Frank Balistrieri, through his efforts with organized crime figures in Chicago, put together the com-

plete package for the purchase of two casinos in Las Vegas. Confidential source number two also advised that Frank Balistrieri received a portion of the "skim" money derived from the gross income of the casinos for arranging the loan for the purchase of the casinos and that he traveled to Chicago once a month to get his "envelope" containing the skim money.

Mr. Fratianno received his information from other La Cosa Nostra members. He informed FBI agents that the Chicago "family" arranged for certain loans to be used for the purchase of the Stardust and Fremont Casinos in Las Vegas. According to Mr. Fratianno, Frank Balistrieri arranged to have Allen Glick, a former classmate of one of his sons, placed in charge of the casinos.

The information provided by confidential source number three came from his personal observations, associations, and "statements made by members of the Milwaukee criminal element, including Frank Balistrieri, Peter Balistrieri, Steve Di Salvo, Salvatore Librizzi, and John Piscuine." (De Marco master affidavit at p. 9). According to confidential source number three, Joseph and John Balistrieri are the "powers to be" behind their father's vending machine interests. This source also stated that the Balistrieris had taken over the more lucrative stops of the vending machine business owned by Peter Picciuro and Leo Dinon. He said these lucrative stops were absorbed by Alioto Distributing Company, a company run by the Balistrieris.

Confidential source number three also discussed business ventures allegedly owned by Frank Balistrieri. He said that Frank Balistrieri uses many front people to lead his business ventures in Milwaukee. He also said that Frank Balistrieri is paying bills incurred by Snug's Restaurant, The Brass Rail, Centre Stage, Leonardo's Pasta House and La Scala Restaurant from a general fund derived from all of his businesses, including illegal businesses.

Although the informants did not specifically set out the exact source of each piece of information and did not always give specific reasons why they believed the sources of the information they received were reliable, the Court is satisfied that the information was credible. The statements made by informants were not casual rumors circulating in the underworld or accusations based merely on an individual's general reputation. Rather, each key statement made by the informants was specific and was supported by statements of other informants and, many times, by direct FBI observation as well.

Informants Fratianno and confidential source number two independently indicated that Frank Balistrieri played a role in the purchase of Las Vegas casinos and that he received skim money for his efforts. Moreover, the allegation that Frank Balistrieri received skim money for his effort was also supported by his own statement that he would be receiving a "transfusion." From the context of his conversation at the time he made that statement, the Court agrees with the Government that there was probable cause to believe he was talking about a transfusion of money.

Confidential source number three's statements concerning Frank Balistrieri's businesses were also specific and corroborated by confidential source number one. Confidential source number one, whose reliability and sources are not challenged by the movants, identified Leonardo's Pasta House, The Brass Rail, Alioto Distributing, Inc. and Snug's Restaurant as Balistrieri businesses. In addition, source number one stated that Frank Balistrieri was paying the bills incurred by his business ventures from a general fund derived from all of his businesses. This information was also corroborated numerous times during the independent investigation. Finally, confidential source number one provided ample support for confidential source number three's statement regarding the role of Joseph and John Balistrieri in the vending machine businesses.

■ Because the key elements provided by the three confidential sources and James Fratianno were consistent with each other and were supported by observations made in the independent investigation, the Court

finds that the informants' statements were credible and supported the finding of probable cause.

The Court's analysis does not end with the finding that the informants were reliable and their information credible. It must make two further determinations. First, it must determine whether the information in the affidavits provided probable cause to believe illegal activity was occurring. Second, it must determine whether the information provided probable cause to believe searches of the location in question would uncover evidence of the alleged illegal activity.

### ILLEGAL ACTIVITY

■ The De Marco master affidavit and the gambling affidavit refer to activities which Agent De Marco believed violated federal law. He believed the activities referred to in the affidavit violated 18 U.S.C. § 1951 (interference with commerce by threats or violence), § 1952 (interstate and foreign travel or transportation in aid of racketeering enterprises), and § 1955 (prohibition of illegal gambling businesses). In addition, he believed the income derived from these activities constituted a violation of 18 U.S.C. § 1962. (Racketeer Influenced and Corrupt Organizations—Prohibited Activities).

The Court is of the opinion that the information contained in the affidavits established probable cause that the alleged violations were occurring. The affidavits established probable cause to believe that Frank Balistrieri owns several restaurants and vending machine businesses and that his sons are involved in those businesses. They also established probable cause to believe the Balistrieris had taken over the more lucrative parts of the businesses of Peter Picciuro and Leo Dinon. Based on the information contained in the master affidavit, the Court now finds that probable cause to believe that the takeovers were accomplished through extortion was established in the phone conversation in which Frank Balistrieri advised Carl Dentice to leave the "rough stuff" to him in the event a particular vendor would not surrender the desired percentage of profits. (Master affidavit, p. 22).

The Court has previously found that probable cause supporting the claim that Frank Balistrieri received skim money was established in the affidavits. That information coupled with the evidence obtained through independent investigation pertaining to Frank Balistrieri's concern about being followed on January 9, 1980 (master affidavit, p. 15), and to the mileage reading on the car utilized by Frank Balistrieri on that date (194 miles) (master affidavit, p. 17), was sufficient to establish probable cause to believe Frank Balistrieri traveled to Chicago to obtain skim money in violation of 18 U.S.C. § 1952.

With respect to allegations concerning a section 1955 violation, movants assert that the 808 East Brady affidavit and the first six pages of the master affidavit reveal nothing more than, at best, an agreement by Frank Balistrieri to participate in a four-man basketball gambling operation to commence sometime after January 10, 1980. They further assert that there could be no violation of section 1955 because the affidavits allegedly do not demonstrate that requirements established by that section as to the number of persons involved, length of time, or gross revenue had been met.

The Court does not agree. Although the affidavits did not prove beyond a reasonable doubt that section 1955 was violated, they were sufficient to support a finding of probable cause. Several sources in the affidavits discussed the gambling of Frank Balistrieri, Dennis Librizzi and Salvatore Librizzi. In addition, the discussions between Salvatore Librizzi and two unidentified persons (gambling affidavit, pp. 24–25) established probable cause to believe other bookmakers and line providers were involved with the three individuals named above. Accordingly, the Court finds the affidavits provided probable cause to believe five or more persons were involved in gambling business, that Frank Balistrieri was one of those persons, and that he received income from the gambling business.

The affidavits also established probable cause to believe the gambling business had a gross revenue of more than $2,000.00 in any single day. The affidavit referred to bets greater than that amount on numerous occasions.

Having found probable cause, cause existed for believing five or more persons were involved in a gambling business and for believing that such business had a gross revenue of $2,000.00 in any single day, the Court concludes probable cause existed for believing section 1955 has been violated.

Section 1962 of Title 18 prohibits any person who has received income derived, directly or indirectly, from a pattern of racketeering activity to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. Section 1961 of Title 18 defines "racketeering activity" to include activities indictable under sections 1951, 1952 and 1953. Therefore, to determine whether probable cause existed to believe section 1962 was violated, the Court need only ascertain whether probable cause existed to believe the income from the activities said to have violated sections 1951, 1952 and 1953 were utilized in the operation of businesses affecting interstate commerce.

Evidence supporting the Government's assertion that money from illegal activities was being used to run Frank Balistrieri's businesses came from several sources. Both confidential source number one and confidential source number three stated that money from Frank Balistrieri's illegal activities was being used to pay the bills from his restaurants and other businesses. In addition, when discussing his "transfusion," Frank Balistrieri was engaged in a discussion about providing money for the operation of one of his business entities.

Based on the foregoing, the Court finds probable cause existed for believing money from illegal activities was being used to run Frank Balistrieri's businesses. Because those businesses are engaged in interstate commerce, the Court finds there was probable cause to believe a violation of section 1962 had occurred.

## SITES SEARCHED

The final determination the Court must make is whether the affidavits established probable cause for believing evidence of the various alleged crimes could be found at the places searched.

Movants do not challenge the searches at every location. Rather, they challenge only those searches of Frank Balistrieri's home and the safe in the Shorecrest Hotel from which the $200,000.00 was seized.

■ With regard to Frank Balistrieri's residence, movants argue there was nothing in the affidavits to establish probable cause to believe that evidence of violations of section 1955 would be found in that home. It is not necessary for the Court to determine whether the affidavits established probable cause to believe evidence of violations of section 1955 would be found in Frank Balistrieri's home; the affidavits clearly support the Government's claim that receipts and money from his businesses, including illegal businesses, would be found in his home. (Master affidavit, pp. 28–31, 37–39).

■ Finally, the Court is of the opinion that probable cause existed to believe skim money would be found in the envelopes in the safe in the Shorecrest Hotel. The Court has found that the statements of confidential source number two and Mr. Fratianno pertaining to skim money were credible. It has also found there was probable cause to believe Frank Balistrieri was traveling to Chicago to pick up skim money. Based on those findings, as well as the statement that Frank Balistrieri would be picking up his "envelope," and the showing that business records of the various Balistrieri businesses would be located in the office where the safe was located, the Court finds there was probable cause to believe the $200,000.00 was "skim" money.

Based on the foregoing, the motion for return and suppression of property must be and is hereby denied.