[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-17005
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00375-CR-1-WSD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS GLEN HILL,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 23, 2009)

Before DUBINA, Chief Judge, BLACK and BARKETT, Circuit Judges.

PER CURIAM:

Appellant Thomas Glen Hill appeals his conviction for receipt of child

pornography, in violation of 18 U.S.C. § 2252A(a)(2). Hill argues that the district court erred in denying his motions to suppress evidence unlawfully seized from his residence. Specifically, Hill claims that police officers unlawfully entered his residence based on information from firefighters responding to a residential fire at his home who observed child pornographic images on his computer. Additionally, Hill argues that his arrest was not supported by probable cause and, therefore, his post-arrest statements, given almost four hours after he was arrested, should have also been suppressed as fruit of the poisonous tree.

I.

A ruling on a motion to suppress presents "a mixed question of law and fact." *United States v. Steed*, 548 F.3d 961, 966 (11th Cir. 2008) (quoting *United States v. Boyce*, 351 F.3d 1102, 1105 (11th Cir. 2003)). We accept the district court's factual findings unless they are clearly erroneous, construing all facts in the light most favorable to the prevailing party below. *Id.* The district court's application of the law to the facts is reviewed *de novo*. *Id.*

The Fourth Amendment "protects the citizen against invasion of privacy." *United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir. 1977). "[T]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."

*Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 1382, 63 L. Ed. 2d 639 (1980); *see also United States v. McGough*, 412 F.3d 1232, 1237 (11th Cir. 2005) (holding that searches and seizures inside a home without a warrant are presumptively unreasonable). The salvage procedure used by the firefighters here clearly qualifies as a search within the Fourth Amendment, even if not conducted by law enforcement officers. *United States v. Parr*, 716 F.2d 796, 811 (11th Cir. 1983) ("salvage and overhaul" involved looking for spot fires to insure all are extinguished, for information revealing the identity of the owner, and for salvageable valuables in order to protect them).

A warrantless search of a home may be justified, however, "where both probable cause and exigent circumstances exist." *United States v. Davis*, 313 F.3d 1300, 1302 (11th Cir. 2002). The exception applies only if the police reasonably believe that an emergency situation justified warrantless action. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002). The government bears the burden of proving an exception to the warrant requirement. *Id.*

A burning residence clearly presents an exigent circumstance, and firefighters are charged with extinguishing the fire, protecting valuables from fire, and also determining the cause of the fire. *Parr*, 716 F.2d at 811-12. The Supreme Court "imposed the warrant requirement on all searches undertaken to investigate

the cause of the fire, excepting only those where the officials 'remain in a building for a reasonable time to investigate the cause of a blaze after it is extinguished.'" *Id.* at 812 (quoting *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S. Ct. 1942, 1950, 56 L. Ed. 2d 486 (1978)). Searches conducted after the initial entry must be within the scope of the exigency justifying the original warrantless entry to extinguish the fire, which serves two interests, (1) preventing fires and (2) discovering evidence of criminal activity related to the cause of the fire. *Id.* at 812, 813 n.19 (noting that, in *Tyler*, a reasonable time was a "few hours," and primarily focusing on the purpose, rather than the temporal connection, between the subsequent warrantless searches and the initial exigency).

Consequently, although we have held that, once one official has intruded a citizen's residence legally, additional officials may also enter, even though the exigent circumstances justifying the initial entry no longer exist, *see United States v. Schuster*, 684 F.2d 744, 748 (11th Cir. 1982), the subsequent entries must be within the scope of the initial entry. *Parr*, 716 F.2d at 813. Where subsequent searches exceed the scope of the exigency, a warrant must be obtained. *Id.*; *see also Brand*, 556 F.2d at 1317 n. 9 (holding that an officer entering a home under the exigent circumstances exception may not search the premises beyond the scope justified by the emergency without obtaining a warrant). While validly on the

4

property in response to an emergency situation, officers are authorized to seize any evidence found in plain view. *See Holloway*, 290 F.3d at 1340.

However, if evidence is seized after an illegal search, it should be suppressed as the "fruit of the poisonous tree." *Davis*, 313 F.3d at 1302-03 (citation omitted). "Although its purpose is to prevent lawless conduct by law enforcement officials, the exclusionary rule is not to be 'interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons.'" *Parker v. Allen*, 565 F.3d 1258, 1290 (11th Cir. 2009) (quoting *Brown v. Illinois*, 422 U.S. 590, 600, 95 S. Ct. 2254, 2260, 45 L. Ed. 2d 416 (1975)). In determining whether evidence is "fruit of the poisonous tree" and, therefore, must be excluded, the relevant question is whether the evidence was obtained "by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Delancy*, 502 F.3d 1297, 1309 (11th Cir. 2007) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963)). The government may "purge the taint" by establishing that the evidence in question was seized pursuant to an independent source. *Davis*, 313 F.3d at 1303. Under the "independent source" doctrine, the challenged evidence is admissible if it was obtained from a lawful source, independent of the illegal conduct, provided that the law enforcement officer's decision to seek the warrant was not prompted by the

information gained during the illegal search. *United States v. Chaves*, 169 F.3d 687, 692-93 (11th Cir. 1999).

Since the warrant affidavit contains hearsay, it is necessary to evaluate if the affidavit presented sufficient facts which allow the magistrate to determine independently whether probable cause existed. A warrant affidavit may be based on hearsay information, so long as the magistrate was informed of (1) the underlying circumstances that the informant relied on to conclude that some criminal activity was taking, or had taken, place, and (2) some facts that established the probable credibility of the informant or the reliability of his information. *United States v. Martin*, 615 F.2d 318, 323 (5th Cir. 1980). Additionally, the warrant affidavit must demonstrate: (1) a connection between the defendant and the location to be searched; (2) a link between the location and criminal activity; and (3) the informant's veracity and basis of knowledge. *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002); *see also United States v. Brundidge*,170 F.3d 1350, 1352-53 (11th Cir. 1999) (holding that "veracity" and "basis of knowledge" are considered in the totality of the circumstances analysis and "a deficiency in one may be compensated for . . . by a strong showing as to the other") (citation omitted).

Here, it is undisputed that firefighters and police officers entered Hill's

6

home without a warrant. Hill does not dispute that the initial entries into his home by firefighters were lawful, as they were responding to an emergency. Even if we assume, *arguendo*, that subsequent entries in the interim were illegal because there was no exigent circumstance to justify these entries and they exceeded the scope of the initial entry, a lawful search was later conducted pursuant to a valid search warrant. Although the search warrant was based on hearsay, the hearsay was based on the personal and reliable observations of firefighters who, while lawfully in Hill's residence, observed the child pornographic images in plain view. The magistrate was informed of the underlying circumstances that firefighters relied on to conclude that some criminal activity was taking, or had taken, place. Consequently, we conclude that the warrant affidavit established probable cause that a search would uncover evidence of a crime, and there is nothing in the record that suggests that the police officers sought the warrant because of what they saw during any unauthorized entry into Hill's home. Accordingly, we hold that the district court properly denied Hill's motion to suppress physical evidence.

## II.

"[T]he Fourth Amendment permits warrantless arrests in public places where an officer has probable cause to believe that a felony has occurred." *United States v. Goddard*, 312 F.3d 1360, 1362-63 (11th Cir. 2002) (quotation omitted).

7

Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Lyons*, 403 F.3d 1248, 1253 (11th Cir. 2005) (quotation omitted). "For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances." *United States v. Street*, 472 F.3d 1298, 1305 (11th Cir. 2006) (quotation and ellipsis omitted). As such, the officer's own subjective opinions or beliefs about probable cause are irrelevant. *Id.* "Because sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment, probable cause itself is a doctrine of reasonable probability and not certainty." *Craig v. Singletary*, 127 F.3d 1030, 1042 (11th Cir. 1997) (addressing a federal habeas petition filed pursuant to 28 U.S.C. § 2254) (internal quotations and citation omitted).

In determining whether statements are tainted by a prior violation of constitutional rights, we ask whether, "granting establishment of the primary illegality, the [statements] . . . [were derived] by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *United States v. Lopez-Garcia*, 565 F.3d 1306, 1315 (11th Cir. 2009) (citation

omitted). "This inquiry is fact-sensitive, and no single fact is decisive." *Id.* However, we have listed three non-exclusive factors to guide the inquiry into whether a defendant's statements were tainted by his illegal arrest: "[1] the temporal proximity of the seizure and the consent, [2] the presence of intervening circumstances, and, particularly, [3] the purpose and flagrancy of the official misconduct." *Id.* (citation omitted).

Here, the record evidence demonstrates that probable cause for Hill's arrest was established prior to the warrantless entry of his home by law enforcement officers, as the firefighter's information was "reasonably trustworthy" and would have caused a "prudent person" to believe that Hill was committing a felony. Based on the eyewitness information provided by the firefighter and the unlikelihood that he would have lied about observing child pornography, the arresting officer had sufficient reason to believe that Hill had committed a crime.

Even if we assume, *arguendo*, that Hill's arrest was tainted by the officer's arguably illegal entry into Hill's home in the interim, which led to the officer's plain view observation of child pornography, we nevertheless conclude that Hill's statements were too removed from the arrest to have suffered any taint. First, the temporal proximity between Hill's confession and his arrest was limited, as he provided statements to detectives almost four hours after being arrested. Second,

9

different law enforcement officers conducted Hill's arrest and questioning. Third, there is no evidence of any flagrant behavior during Hill's interrogation or that he was coerced, intimidated, or tricked in any way. Moreover, police officers read Hill his *Miranda*[1] rights, he indicated that he understood them, and he validly waived them before providing incriminating statements. Thus, even if the underlying arrest violated Hill's Fourth Amendment rights, there is no basis for concluding that the allegedly illegal arrest tainted the statements he provided to law enforcement officers regarding his possession of child pornography. Accordingly, we affirm Hill's conviction.

**AFFIRMED.**

---

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).