[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13780
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-20770-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RANDY SAM JACKSON,

Defendant-Appellant.

_____

No. 14-13915
Non-Argument Calendar

_____

D.C. Docket No.  1:13-cr-20770-WJZ-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRANDEN ANTHONY JONES,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(June 29, 2015)

Before WILSON, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Randy Sam Jackson and Braden Anthony Jones appeal their convictions for one count of conspiracy to possess 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) and (b)(2), and one count of aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1) and (2). Both Jackson and Jones appeal the district court's denial in part of Jackson's motion to suppress physical evidence found after law enforcement officers conducted a knock and talk at Jackson's efficiency apartment, where Jones was also present. After discovering evidence of marijuana in plain view, the officers arrested Jackson and Jones, and they later discovered evidence of fraud and identity theft, which led to the charges in this case. Jones also appeals the district court's outright denial of his motion to suppress the same evidence on the ground that he failed to establish his standing to assert a Fourth Amendment claim.

2

Standing

On appeal, Jones argues that the district court erred by, sua sponte, raising the issue of his standing to assert a Fourth Amendment violation after it had already conducted an evidentiary hearing on his motion to suppress.  He maintains that, while he had the ultimate burden to establish his standing, he was not required to present evidence on the issue unless the government raised it.

Because rulings on motions to suppress present mixed questions of fact and law, we review the district court's factual findings for clear error, and its application of the law to the facts de novo.  *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000).  We construe the facts in the light most favorable to the party that prevailed below.  *Id.*  In addition, Fourth Amendment violations are subject to harmless error review.  *United States v. Rhind*, 289 F.3d 690, 692, 694 (11th Cir. 2002) (applying harmless error review in the guilty plea context).  The relevant inquiry is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  *Id.* at 694 (internal quotation marks omitted).

The Fourth Amendment prohibits law enforcement from conducting "unreasonable searches and seizures."  U.S. Const. amend. IV.  To have standing to challenge a search or seizure under the Fourth Amendment, one must manifest an objectively reasonable expectation of privacy in the invaded area.  *United States*

3

*v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998).  The proponent of a motion to suppress has the burden to allege, and if the allegations are disputed, to prove, that his own Fourth Amendment rights were violated by the challenged search or seizure.  *United States v. Bachner*, 706 F.2d 1121, 1125 & n.5 (11th Cir. 1983).  If the movant establishes an expectation of privacy in the premises searched and the items seized, then "the burden of proof shifts to the [government] to establish that an exception to the search warrant requirement was applicable" and that the search and seizure were reasonable.  *Id.* at 1126.  The movant's standing to challenge a search or seizure is a threshold issue that the district court must address when ruling on a motion to suppress.  *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984) (per curiam).

Where a motion to suppress fails to allege facts that, if proven, would establish the defendant's legitimate expectation of privacy in the premises searched or items seized, the district court is not required to hold an evidentiary hearing to receive evidence on the motion.  *See id* at 888.  "Once a defendant has failed to make a proper pretrial request for suppression, the opportunity is waived unless the district court grants relief for good cause shown."  *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985).

Nonetheless, if the district court addresses the merits of a defendant's Fourth Amendment claim without receiving evidence relating to his standing to bring such

4

a claim, a reviewing court may be required to remand the case for fact-finding on the standing issue. *See Combs v. United States*, 408 U.S. 224, 226–28 & n.3, 92 S. Ct. 2284, 2285–86 & n.3 (1972) (remanding for further fact-finding, where the court of appeals upheld the denial of the defendant's motion to suppress on the ground that he lacked standing to pursue a Fourth Amendment claim; and where the government did not challenge his standing and the district court, which rejected his claim on the merits after holding an evidentiary hearing, made no factual findings on the standing issue); *Bachner*, 706 F.2d at 1126–28 (in appeal by the government, remanding for fact-finding on the defendant's standing to pursue a Fourth Amendment claim, where the district court declined to receive evidence on that issue and proceeded directly to the merits of the defendant's claim, granting in part his motion to suppress). A remand is not necessary, however, if the government challenged the defendant's standing in the district court, and the defendant had an opportunity to present evidence to prove his standing but failed to do so. *See Rakas v. Illinois*, 439 U.S. 128, 130–31 & n.1, 99 S. Ct. 421, 423–24 & n.1 (1978).

Here, even assuming arguendo that the district court erred by denying Jones's motion to suppress without giving him an opportunity to address the standing issue, any error was harmless. In its order addressing both defendants' motions to suppress, the court noted that, if Jones had standing, it would deny in

5

part and grant in part his motion, consistent with its disposition of Jackson's motion.  For the reasons discussed below, we conclude that the district court did not err by denying in part Jackson's motion.  Thus, if Jones had prevailed on the standing question below he would have been entitled to suppression of the evidence suppressed in Jackson's case, namely, a backpack that was found on the floor in Jackson's apartment, a laptop found inside the backpack, and three cell phones, which were found in the backpack and on a nearby table.

However, Jackson and Jones entered closely similar plea agreements with identical factual proffers, which did not mention the backpack, the laptop found therein, or the three cell phones.  Moreover, the government did not discuss these items at Jackson and Jones's joint change-of-plea hearing when it offered a factual basis for Jones's pleas, and the record lacks any indication that these items incriminated Jones in the offenses to which he pled guilty, which were the same offenses to which Jackson pled guilty.  Accordingly, there is not a reasonable possibility that the backpack, the computer found therein, and the three cell phones contributed to Jones's convictions.  *See Rhind*, 289 F.3d at 694.

Suppression

On appeal, Jackson and Jones argue that the officers violated the Fourth Amendment by entering the fenced-in yard outside Jackson's efficiency apartment, which was attached to a single-family house.  Jackson and Jones point out that the

6

fence had a beware-of-dog sign; the driveway leading through the fence gate was unpaved; there was no delineated path leading to the apartment's exterior door; the door was unmarked and had no knocker or bell; and there was no mailbox nearby. They also assert that, under Fla. Stat. § 810.09(1)(a)(1), entering the yard through the gate constituted a trespass.

Jackson and Jones further argue that, even if the officers could lawfully approach the apartment's exterior door, they violated the Fourth Amendment by searching its interior and seizing a laptop computer, notebook, and Florida Access Card they found on the table, and Florida Access Cards and a checkbook they found in the backpack on the floor. At that point, the officers had already arrested Jackson and Jones and, the appellants maintain, the scene was secure. The appellants also contend that the officers were not permitted to conduct a protective sweep because there was no indication that the apartment harbored any other people. In any event, they argue, the officers did not make the seizures during the protective sweep. Instead, they exited the apartment and reentered to further inspect the items before seizing them.

The Fourth Amendment protects individuals from unreasonable government intrusions into their homes and the curtilages of their homes. *See Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742 (1984). For Fourth Amendment purposes, curtilage is the area surrounding the home in which an individual has a

7

reasonable expectation of privacy. *Id.* Notwithstanding the protections of the Fourth Amendment, law enforcement officers are not categorically excluded from entering the curtilage of the home without a warrant. *See Florida v. Jardines*, 569 U.S. __, __, 133 S. Ct. 1409, 1415 (2013). Officers may approach a home "for legitimate police purposes unconnected with a search of the premises." *United States v. Taylor*, 458 F.3d 1201, 1204 (11th Cir. 2006). Officers are permitted "to knock on a residence's door or otherwise approach the residence seeking to speak to the inhabitants just a[s] any private citizen may." *Id.* (internal quotation marks omitted). Officers may not, however, cross the threshold of the home to conduct a warrantless search or seizure absent consent or exigent circumstances. *Payton v. New York*, 445 U.S. 573, 576, 582–83, 590, 100 S. Ct. 1371, 1374–75, 1378, 1382 (1980).

The Fourth Amendment also permits law enforcement officers to conduct a "protective sweep," incident to a lawful arrest, if they possess "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[] the officer[s] in believing that the area swept harbor[s] an individual posing a danger to the officer[s] or others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S. Ct. 1093, 1094–95 (1990) (internal quotation marks omitted). The sweep must be "narrowly confined to a cursory

8

visual inspection of those places in which a person might be hiding." *Id.* at 327, 110 S.Ct. at 1095.

Officers may seize an object they discover in plain view during a proper protective sweep if they have probable cause to believe the object is contraband. *United States v. Tobin*, 923 F.2d 1506, 1513 (11th Cir. 1991) (en banc); *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006); *see also Horton v. California*, 496 U.S. 128, 141–42, 110 S. Ct. 2301, 2310 (1990) ("The prohibition against general searches and general warrants serves primarily as a protection against unjustified intrusions on privacy.  But reliance on privacy concerns that support that prohibition is misplaced when the inquiry concerns the scope of an exception that merely authorizes an officer with a lawful right of access to an item to seize it without a warrant").  "Probable cause exists when under the totality of the circumstances there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Tobin*, 923 F.2d at 1510 (internal quotation marks omitted).  While we decide the legal issue of whether probable cause exists, we give weight to the inferences law enforcement agents draw from the facts. *Smith*, 459 F.3d at 1291.

Once a defendant's privacy interest is "invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy." *United States v.*

9

*Brand*, 556 F.2d 1312, 1317 (5th Cir. 1977).[1]  Additional investigators or officials may enter a citizen's property after one official has already intruded legally, even though the circumstance giving the first official license to enter has dissipated.  *Id*.

Here, the district court did not err in concluding that the officers were conducting a permissible knock and talk when they approached the exterior door of Jackson's efficiency apartment.  The court found that the path the officers took was the same path any person visiting the apartment would have used.  The court's finding was supported by the undisputed fact that the apartment had only one entrance.  Moreover, the officers conducted the knock and talk in response to a tip reporting a "high traffic of people coming and going" from the efficiency apartment, specifically.  The court noted that the apartment's door was behind a chain-link fence and that the fence contained a beware-of-dog sign.  However, the court concluded that no dog was present at the time and that the sign, which did not say "No Trespassing" or "Do Not Enter" did not serve as a signal that visitors were unwelcome.  In addition, the court credited the officers' testimony that the gate was open on the night in question, and it noted that Jackson did not contest the fact that he had opened the door voluntarily in response to the officers' knock.

Jackson and Jones's argument that the officers' entry constituted a trespass

---

[1] In *Bonner v. City of Prichard*, we agreed to be bound by decisions of the Fifth Circuit handed down prior to the close of business on September 30, 1981.  661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

10

under Fla. Stat. § 810.09(1)(a)(1) is unavailing.  That statute provides that a person trespasses when he enters a property "[a]s to which notice against entering or remaining is given, either by actual communication to the offender or by posting [or] fencing."  Fla. Stat. § 810.09(1)(a)(1).  However, as discussed above, the court concluded that, in this case, the fence and beware-of-dog sign did not constitute notice against entering.  In addition, the Florida statute could not, of its own force, control the outcome here and require exclusion of the evidence.  *See Virginia v. Moore*, 553 U.S. 164, 177–78, 128 S. Ct. 1598, 1608 (2008).

Jackson and Jones' argument that, because there was no delineated path leading up to the door, and because the door did not have markings, a doorbell or knocker, or an adjacent mailbox, there was no implied invitation to enter is likewise unavailing.  The appellants point to no authority stating that these attributes are necessary to find that an implied invitation to enter existed.  Their reliance on *Jardines* is misplaced, as that case provides only that a door knocker serves as an implied invitation to knock, not that the absence of a knocker, or any other specific features, is necessarily a signal not to do so.  *See Jardines*, 569 U.S. at __, 133 S. Ct. at 1415–16.

Jackson and Jones' contention that the officers' protective sweep violated the Fourth Amendment is meritless.  The district court determined that the protective sweep was justified based on the officers' observation of a partially

11

concealed back area of the efficiency unit.  The district court's determination was supported by the testimony of both officers that they believed a person could have been in the back area of the apartment, and photographs entered into evidence by the government, which depict a concealed area large enough to harbor a person. *See Buie*, 494 U.S. at 327, 110 S. Ct. at 1094–95.  The district court's conclusion that the protective sweep was appropriately limited was supported by the officers' testimony that, during the sweep, which lasted about one minute, they examined only the back area of the apartment and under the bed.

The officers were permitted to seize items in plain view during the protective sweep if they had probable cause to believe the items were contraband. *Tobin*, 923 F.2d at 1513.  The district court found that, during the protective sweep, one officer observed multiple Florida Access Cards in the open backpack on the floor, which, to him, was inherently criminal, and another officer observed a laptop computer open to a tax-return-filing website and a notebook containing names, social security numbers, and birthdates, which indicated to him that a fraud was taking place.  The officers were correct to conclude that these items established probable cause that Jackson and Jones were engaged in fraudulent activity.

Jackson and Jones's argument that the officers were not permitted to seize the evidence because they exited the apartment after the protective sweep and they had no justification for reentering is unavailing.  The testimony of the two officers

12

conflicted as to whether they exited the apartment after concluding the protective sweep, and the court did not resolve the conflict.  However, even if the officers exited and then reentered to collect the evidence, the seizures did not violate the Fourth Amendment.  By reentering the apartment, the officers would not have violated any privacy interest of Jackson or Jones that they had not already lawfully violated during the protective sweep.  The officers were not searching the apartment for additional evidence.  They were merely collecting evidence that they could have lawfully seized earlier.  *See Horton*, 496 U.S. at 141–42, 110 S. Ct. at 2310.  Similarly, the district court did not err in determining that no Fourth Amendment violation occurred when crime scene technicians entered the apartment to take pictures of the items the officers had properly seized.  *See Brand*, 556 F.2d at 1317.

Accordingly, for the reasons discussed above, Jackson's and Jones's convictions are **AFFIRMED**.