**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony GLASBY, Defendant-Appellant.**

**No. 78–1016.**

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1978.
Decided May 18, 1978.

Elliot Samuels, Samuels & Weininger, Chicago, Ill., for defendant-appellant.

Leida Schoggen, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Circuit Judge, MARKEY, Chief Judge of the Court of Customs and Patent Appeals,[1] and CUMMINGS, Circuit Judge.

SWYGERT, Circuit Judge.

The sole issue is whether the district court erred in denying the defendant's motion to suppress evidence seized during a search of his apartment. We find that the district court properly denied the motion and therefore affirm the conviction.

1. The Honorable Howard T. Markey of the United States Court of Customs and Patent Appeals is sitting by designation.

## I

On May 5, 1977 Postal Inspector Hagedorn was notified in Chicago that two days earlier United States Customs in New York had seized a parcel of mail containing heroin. The parcel had been mailed from Thailand addressed to the defendant's Chicago residence. Among other items the parcel contained a pair of platform boots; the heroin was in the heels of the boots. Upon receipt of the parcel in Chicago further testing confirmed that the substance was heroin. Pictures were taken and the package resealed in its original wrappings. A controlled delivery of the parcel was unsuccessfully attempted on May 12.

A successful controlled delivery occurred on May 26. An affidavit and search warrant had previously been prepared by Agent Tucci and were ready for presentment to a magistrate except for the minor addition of details such as actual time of delivery. Arrangements had been made to have a magistrate ready at 7:30 a. m. At 6:45 a. m. several agents assembled near the defendant's residence. Inspector Witkowski left the group and at about 7:10 a. m. made the controlled delivery directly to Anthony Glasby after Ernest Glasby, the defendant's father, had answered the door of the apartment. Witkowski returned to the group of agents who then placed the building under surveillance while remaining in radio contact with one another. About one-half hour later, at 7:45 a. m., the defendant's father left the building carrying two bags, a plastic bag which he dropped by some garbage cans and a brown paper bag. Agents Hacias and Inspectors Hagedorn and Witkowski notified the others of the departure, and then followed Ernest Glasby in their car down the alley adjacent to the building. Two blocks away Hacias, Hagedorn, and Witkowski arrested the father, brought him into the vehicle, opened the paper bag, and discovered the boots with the heels and heroin removed. Witkowski then advised Glasby of his *Miranda* rights. Hacias notified the other agents of this development, suggesting that the heroin was probably still in the building.

What occurred next is not clear. Hacias, who had actually questioned Ernest Glasby, was unavailable for testimony at the suppression hearing. According to Hagedorn, when the agents told the father that they were going to be entering his apartment and were discussing how to gain entry, he responded that he had nothing to hide and gave his consent and house keys. Witkowski testified that Hacias said:

"We know there is heroin in the house, if you didn't bring it out."

[Glasby] says, "No, there is no heroin in the house. I'm not involved in that type of activity."

And Agent Hacias then said, "Well, if there is no heroin in the house, can we go in and see?

He says, "I don't care, go ahead. We have nothing to hide," at which time he offered a set of house keys to Agent Hacias.

During this same period of time, Agent Tucci and Assistant United States Attorney Frese were at the federal building in Chicago completing the search warrant and awaiting the arrival of the magistrate, who did not arrive until nearly one hour after the arranged time. After Frese heard that the empty boots had been recovered, he told the agents to secure the apartment, but not to conduct any search until the warrant arrived.

About 7:45 a. m., upon being told to secure the apartment, Agents Zervos and Sanchez, who were stationed in the alley, headed toward the building and saw Anthony Glasby on the back porch. They announced that they were federal officers and started up the stairway. On their way up the stairs, they heard a door slam and when they reached the porch found the door closed. The agents again identified themselves, waited ten seconds, and then Zervos kicked in the door. As he entered the kitchen, Zervos heard a toilet flushing and ran to the bathroom area where he grabbed the defendant. Zervos observed a plastic bag with a white powdery residue in it on the floor by the defendant's feet and water running in the sink. Zervos was unable to

retrieve any residue from the toilet bowl. He then went to the front door to admit the other agents who were knocking on the door. The agents and the two Glasbys assembled in the dining room to await the arrival of the warrant.

At 8:25 a. m. the magistrate arrived at his office and signed the warrant. Tucci notified the other agents and told them not to do anything until he arrived. He arrived about 8:45 a. m. The agents then proceeded to search the apartment for additional evidence.

Prior to trial the judge held a hearing and denied the defendant's motion to suppress. After a bench trial, the defendant was found guilty of possession of heroin in violation of 21 U.S.C. § 841(a)(1) and sentenced to two years imprisonment followed by a three-year special parole term.

## II

■ The defendant urges reversal on the ground that his Fourth Amendment rights were violated. The record clearly shows that no search warrant had been signed until well after the agents' entry into the apartment. A forcible entry into a private residence without a warrant is *per se* unreasonable, subject only to a few well established exceptions. *See Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). In order to determine whether one of those exceptions applies, the court must consider the peculiar facts of each case, and the totality of the circumstances. *United States v. McKinney*, 155 U.S.App.D.C. 299, 477 F.2d 1184 (1973). *See generally United States v. Reed*, Nos. 77–1319, 77–1320, 572 F.2d 413 (2d Cir. Apr. 11, 1978).

The Government argues that because no "search" of the apartment took place before the warrant had been authorized and that no "seizure" occurred until the warrant had been brought to the apartment, the only issue before this court is whether the forced entry violated the defendant's Fourth Amendment rights. It further argues that viewing the facts in the light most favorable to the Government, the district judge correctly found the consent by the elder Glasby to be sufficient for entry.

■ It is settled that a warrantless search is valid if a person has consented to what would otherwise be a violation of his Fourth Amendment rights. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It is also settled that when relying on consent as a justification for its acts, the prosecution has the burden of establishing that the consent was, in fact, freely and voluntarily given. *Bumper v. North Carolina*, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Here, it is Ernest Glasby whose consent is at issue.[2] He had just been arrested, patted-down, given his *Miranda* warnings, and was in the agent's car.

■ The defendant focuses on the issue of the voluntariness of the consent, *i. e.*, whether the agents asked the senior Glasby for permission to enter the apartment, or whether the agents first told him that they were going to have to enter his apartment and then he consented. The defendant suggests that in view of the totality of the circumstances at the time, his father's consent was not a voluntary act. An examination of the record shows that the Government may not rely on the defendant's father's "consent" because the agents to whom Glasby gave his consent were not the agents who forced entry into the apartment. Those agents, in fact, were never told that Glasby had given his consent. Because the entry cannot be justified under the consent exception to the search warrant requirement, we do not reach the issue of voluntariness.

■ We do find, however, that the entry was permissible under another of the exceptions—the destruction of evidence exception. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). A war-

---

2. There appears to be no question about the fact that Ernest and Anthony Glasby had equal rights to use or occupation of the apartment.

rantless entry may be valid if government agents have particular reason to believe that evidence exists which could easily be destroyed. The record here shows that the agents all knew that a controlled delivery of a mail parcel containing heroin had been made at about 7:15 a. m. They also knew that both the defendant and his father had been present in the apartment at the time of the delivery, and that the father had left the building with the boots but with the heels and heroin removed. It therefore was reasonable for the agents to believe that the heroin was still in the apartment and could easily be destroyed. Additionally, Zervos and Sanchez had seen the defendant looking out from the back porch of his apartment and reasonably could have believed that he had seen his father followed and that the agents who were coming toward him would want to search his apartment for the heroin. The two agents had just been ordered to secure the premises, but were also told not to search until the warrant arrived. There is no indication that the two agents acted in bad faith; it was reasonable for them to believe that they needed to act quickly. Time was clearly of the essence. The threat of destruction of the evidence was very real. Therefore, it was not necessary for Zervos and Sanchez to have received word of Ernest Glasby's "consent" or to have waited for the defendant to open the door. The evidence clearly demonstrated that forcible entry into the defendant's apartment prior to the arrival of the search warrant was justified and reasonable. The Fourth Amendment proscribes only those warrantless searches or seizures which are unreasonable.

The conviction is affirmed.