**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph BOMENGO, a/k/a Joe Russo, Defendant-Appellant.**

No. 77–5805.

United States Court of Appeals, Fifth Circuit.

Sept. 15, 1978.

Rehearing Denied Oct. 16, 1978.

Max P. Engel, Don S. Cohn, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Bruce A. Zimet, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before COLEMAN, GEE and HILL, Circuit Judges.

COLEMAN, Circuit Judge.

Joseph Bomengo was charged in a two-count indictment with the possession of two unregistered and improperly marked firearm silencers in violation of 26 U.S.C. §§ 5861(d), 5861(i), and 5871. A jury convicted him on both counts. We affirm.

On appeal Bomengo contends that the trial court committed reversible error in denying his suppression motion, by denying his motions for judgment of acquittal, and by giving an erroneous jury instruction. A thorough examination of the issues reveals that with the exception of the claimed denial of defendant's motion to suppress, Bomengo's claims of error are clearly without merit, so we discuss only the suppression point.

I

Throughout the evening of December 6, 1976, the chief engineer (Maurer) at Coro-

nado Towers, a segment of the Aventura Apartment complex, noticed water leakage outside Bomengo's apartment.[1] Meanwhile, attempts were made, unsuccessfully, to locate the apartment occupants. On the morning of December 7, in an attempt to locate the source of the leak, and stop it, Maurer forced open the front door and entered the apartment. Maurer then called the security director (Trupp) of the apartment complex, and asked him to come to the apartment. Both men inspected the apartment to determine the severity of the water damage and to insure that there were no ill or disabled persons inside. The security director noted that the louver doors of a den closet were ajar and that two handguns with attached silencers, in plain view, were inside the closet.

At this point, the security director telephoned Detective Robert Lengel of the Dade County Public Safety Department and requested that he come to the scene. When Lengel arrived at Bomengo's apartment he knocked at the front door. Trupp invited Lengel in and directed him to the den closet. The closet door was still ajar. Lengel saw two silencers. Without touching or moving the silencers, Lengel left forthwith and proceeded to obtain a search warrant.

## II

The defendant now argues that the trial court erred in failing to suppress the physical silencers seized pursuant to the search warrant, which, in turn, had issued pursuant to what the private individuals had first observed.

■ The Fourth Amendment proscribes only governmental action. A search by a private individual for purely private reasons does not raise Fourth Amendment implications. *See, e. g., Burdeau v. McDowell*, 256 U.S. 465, 475–76, 41 S.Ct. 574, 65

L.Ed. 1048 (1921); *United States v. McDaniel*, 5 Cir., 1978, 574 F.2d 1224, 1226 (and cases cited therein). There is no doubt that the initial entry into the apartment was effected by private persons for non-official purposes. That, of course, was outside the bounds of the Fourth Amendment, *see United States v. Mekjian*, 5 Cir., 1975, 505 F.2d 1320, 1327. Indeed, the government first learned of what had been seen in plain view only after that occurrence had taken place. Neither Maurer nor Trupp acted as an "instrument" or "agent" of the government, *see Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The defendant's suggestion at oral argument that there was state action in the initial search because of Trupp's former employment as a police officer and because he previously had supplied Detective Lengel with reliable information regarding criminal activity, is without merit. *See, e. g., Burdeau, supra,* (private detective); *United States v. Francoeur*, 5 Cir., 1977, 547 F.2d 891 (security guard); *United States v. Valen*, 3 Cir., 1973, 479 F.2d 467, 469 (airline employee paid for supplying police with information).

Nonetheless, the defendant argues that the subsequent view by Detective Lengel constituted a warrantless search in violation of the Fourth Amendment. On the other hand, the government contends that there was no "search" by Lengel which would raise Fourth Amendment implications. We agree.[2]

■ We have long recognized that a police view subsequent to a search conducted by private citizens does not constitute a "search" within the meaning of the Fourth Amendment so long as the view is confined to the scope and product of the initial search.

---

1. This apartment was leased by Helen Young, leasing agent, to Bomengo, using the alias "Joe Russo", and to his friend, Bernard Bollender, using the alias "Al Monaco". Although Monaco signed the lease, Bomengo stated that he would be the one staying in the leased apartment.

2. Therefore, it is unnecessary to decide whether the police view here would fall within one of the exceptions to the Fourth Amendment requirement that there be a search warrant.

In *Barnes v. United States,* 5 Cir., 1967, 373 F.2d 517, a motel owner searched a travel bag left behind by a defendant. Subsequently, the motel owner notified the police that he had discovered suspicious checks inside the bag. The police then examined the contents of the bag. We held that there was no governmental search within the ambit of the Fourth Amendment.

In *United States v. Blanton,* 5 Cir., 1973, 479 F.2d 327, and recently in *United States v. McDaniel, supra,* we rejected the argument that for Fourth Amendment purposes a governmental view subsequent to a private search constituted a "new search". In both cases airline employees opened unidentifiable, unclaimed baggage in an effort to determine ownership. In *Blanton* the defendant's baggage was found to contain a gun with a silencer. In *McDaniel* firearms and narcotics were discovered. In both cases the bags were resealed and federal officers were notified of the discovery. The officers then reopened the bags. We held in both cases that the initial search was valid because it was conducted by private citizens and that the subsequent view by the officers did not constitute a "separate or additional search", 574 F.2d at 1226; 479 F.2d at 328. That the officers were required to reopen the baggage in order to inspect the contents was, under the circumstances, of no legal significance.

The defendant seeks to distinguish *Barnes, Blanton,* and *McDaniel* on the ground that the police view of the silencers here took place in Bomengo's apartment instead of in a public area such as the boilerroom. This argument fails because in *Barnes, Blanton,* and *McDaniel* we were concerned with whether the government had impermissibly invaded the defendant's reasonable expectation of privacy.

This case turns on the fact that the efforts of the apartment employees to deal with the leaking water were not illegal and were a reasonably foreseeable intrusion of privacy. Water was seen outside the defendant's apartment. This indicated that there might be water damage inside the apartment which could, in turn, leak into the apartments below. After making a reasonable effort, for approximately twelve hours, to locate the occupants of the apartment, the chief engineer gained entrance into the apartment. After securing the source of the water leakage, Maurer with the assistance of Trupp, the security director, examined the apartment to determine the severity of the water damage. In addition, both employees knew that the apartment was occupied. Unable to contact the occupants, however, Maurer and Trupp sought to determine whether they might be ill or disabled. During the course of this effort they inadvertently discovered the silencers, in open sight.

Detective Lengel came to Bomengo's apartment at Trupp's request. Upon arrival, Lengel knocked on the front door of the apartment and was admitted. Trupp led Lengel directly to the closet where the handguns with silencers were located. Lengel merely looked at the silencers through the open closet door. He then left to procure a search warrant.

With these facts in mind, *see Eisentrager v. Hocker,* 9 Cir., 1971, 450 F.2d 490, 492 (landlady invited police into defendant's apartment to view a corpse she had discovered). *See, also, United States v. Brand,* 5 Cir., 1977, 556 F.2d 1312 (once the privacy interest has legally been invaded, to the extent of that invasion the citizen has lost his reasonable expectation of privacy).

It is clear that the police view was confined strictly to the scope of the initial discovery. Before the silencers were seized a warrant was obtained. We conclude, therefore, that no search within the ambit of the Fourth Amendment took place.

Accordingly, the judgment of the District Court is

AFFIRMED.