**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Edward Allen SCHUSTER, Defendant-Appellee.**

No. 81–5478.

United States Court of Appeals, Eleventh Circuit.

Aug. 30, 1982.

Robyn Herman, Asst. Federal Public Defender, Miami, Fla., for defendant-appellee.

Before FAY, JOHNSON and HENDERSON, Circuit Judges.

FAY, Circuit Judge:

In the unusual posture of appellant, the government appeals from an order of the District Court for the Southern District of Florida granting the defendant's motion to suppress. The defendant, Edward Allen Schuster, challenged the warrantless search of his girlfriend's apartment which produced evidence eventually leading to his arrest for possession and distribution of counterfeit currency, 18 U.S.C. §§ 472 and 473. He additionally contests the validity of his subsequent arrest, the probable cause for which was based in part on the evidence seized from his girlfriend's apartment. Judge Eugene P. Spellman found the "consent" relied upon by the government for the initial search suffered from two fatal defects and was thus invalid justification for the warrantless search. He ruled the elimination of this evidence from the determination of probable cause rendered the subsequent arrest and the search incident to it invalid as well. We disagree with the District Court's preliminary evaluation of the consent issue. Consequently, we reverse the District Court's holding that the initial search was invalid and remand the case for a new determination of probable cause, in which the court shall consider the evidence obtained from the initial search.

*The Case of the Substitute Agent*

It was March 19, 1979, when Charles Poteat contacted the United States Secret Service in Miami, Florida, to inform them that the defendant, Edward Schuster, had told him that he had access to counterfeit $100 bills which would be available for sale. At that time Poteat worked for Schuster at a hotel pool. Agent Capaso, who had received Poteat's call, relayed the information

Sonia Escobio O'Donnell, Jon May, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellant.

to Agent Bowron, who subsequently became the focus of the consent issue. Agent Bowron met with Poteat that afternoon, arranged for Poteat to secure a sample of the counterfeit money and to tell Schuster that he had a buyer.

The meeting was set. Under the watchful eyes, but too distant ears of another agent, Poteat received apartment keys from Schuster.[1] According to Poteat, Schuster had told him that a sample bill could be found under a roll of toilet paper in a closet at his girlfriend's apartment. Poteat and Agent Bowron went to the apartment. Poteat handed the keys to Bowron, who opened the door, proceeded to the disclosed location, and retrieved the sample $100 bill. Neither Poteat nor Bowron made any attempt to search the remaining areas of the apartment. The agents and Poteat subsequently returned to the hotel, where an agent witnessed Poteat return the keys to Schuster and pay him $30 in pre-recorded bills.

Enticed by the success of their first plan, the Secret Service requested Poteat to arrange a deal with Schuster to obtain $2,000 in counterfeit bills and to introduce an undercover agent as the buyer.[2] The introduction never took place, but on March 22, Poteat delivered $2000 in counterfeit $100 bills to the Secret Service and explained that he had secured them from Schuster.

The Secret Service then accompanied Poteat to the hotel and supplied him with $450 in pre-recorded bills to pay Schuster for the $2,000 of counterfeit money. The agents instructed Poteat to make the payment, if possible, within the visual range of one of the agents. But the transaction took place in private, unwitnessed by any of the agents. Poteat signalled the agents upon completion of the exchange. This initiated the arrest of Schuster and the search incident to the arrest, which revealed his possession of the $450 in pre-recorded funds.

The defendant moved to suppress the original $100 counterfeit bill contending that the authorization given to Poteat to enter the apartment was exceeded by Agent Bowron's active participation and thus invalidated the consent upon which the warrantless search retained its validity. More precisely, defense counsel argued that the government knew that it lacked probable cause for a search warrant and attempted this plan as its only alternative to secure evidence to establish probable cause for the subsequent arrest. Further, the defense argued that because Schuster had no knowledge of the government's involvement, he could not *voluntarily* consent to the search. The magistrate recommended a denial of the motion. The District Court, however, heard the motion *de novo* and reviewed the transcript of the proceedings before the magistrate and additional testimony from Poteat and Agent Bowron. The court concluded that "the defendant never consented to a search by Agent Bowron" and that "the defendant was not aware that he was consenting to a search by government agents. He was led to believe that he was merely allowing one of his employees to enter the apartment." Record, vol. I, at 54.

The District Court next evaluated the evidence, excluding the counterfeit $100 bill, to determine the existence of probable cause for the arrest and in turn the validity of the search incident to it. The record reflected that Poteat was a convicted felon and admittedly held a grudge against Schuster. Further, the Secret Service had relied solely on Poteat's version of the transactions involving Schuster and with the exception of witnessing the transfer of the apartment keys had not been privy to any meetings or conversations involving the defendant. In light of "[t]his scanty and

---

1. The apartment actually belonged to Schuster's girlfriend, but there is no dispute as to Schuster's standing to contest the search since he resided there.

2. The Secret Service specifically instructed Poteat to arrange the transaction so that it could be witnessed by an agent. Poteat did not do this, however, and called Agent Bowron after he had obtained the counterfeit money. During argument on the motion, defense counsel pointed to this failure to follow instructions as an example of the government's inability to corroborate Poteat's story.

unreliable information" the District Court found a lack of probable cause to arrest.

*Consent and the Fourth Amendment*

The framers of our Constitution created the fourth amendment to safeguard against government intrusion into the privacy of the individual. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is *'per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). Consent is one of those "established and well-delineated exceptions." And it was Schuster's consent to permit Poteat to enter the apartment for the specific purpose of obtaining a sample counterfeit $100 bill which validates the otherwise unconstitutional warrantless search in this case.

The defendant basically makes two arguments: first, Schuster's consent to Poteat was tainted by Poteat's deception of his purpose for obtaining the $100 bill; and second, even if the consent to Poteat was valid, it did not constitute an authorization nor give Poteat the right to extend the consent to Agent Bowron. We cannot accept either contention.

■ "In situations where the police have some evidence of illicit activity, but lack probable cause to arrest or search, a search authorized by a valid consent may be the only means of obtaining important and reliable evidence." 412 U.S. at 227, 93 S.Ct. at 2048. In this case, Poteat had informed the Secret Service that Schuster was involved in the illicit activity of selling counterfeit currency, but their only means of obtaining sufficient evidence to establish probable cause was through Poteat's cooperation. Acting as an agent of the government, Poteat obtained Schuster's consent to enter his girlfriend's apartment and obtain

the evidence which would substantiate further government investigation of Schuster's criminal activity. To say that Schuster was incapable of consenting because he was ignorant of Poteat's connection with the Secret Service and therefore had no conception of the consequences of giving Poteat his keys, would fly in the face of established precedent approving the use of confidential informants in criminal investigations. As the Court held in *Schneckloth,* "when the subject of a search is not in custody and the [government] attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion. . . ." 412 U.S. at 248, 93 S.Ct. at 2059. There is no requirement that the government prove "an intentional relinquishment or abandonment of a *known* right or privilege." *Id.* at 243, 93 S.Ct. at 2056 (emphasis supplied).

In *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), the Supreme Court addressed the government's use of undercover techniques to obtain vital evidence. The Court held that an agent's entry into the defendant's home upon his invitation without the agent's divulging his true identity did not violate the defendant's fourth amendment rights.[3] In fact, the Court articulated its concern that to hold otherwise "would come near to a rule that the use of the undercover agents in any manner is virtually unconstitutional *per se.*" 385 U.S. at 210, 87 S.Ct. at 427. *See also United States v. Enstam,* 622 F.2d 857 (5th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

The defendant argues that *Lewis* is factually distinguishable because the defendant "invited" the *agent* into his home and the evidence obtained consisted only of the marijuana purchased by the agent. These facts, the defendant contends, do not involve a search and therefore alleviate any concern over a warrant. The defendant is

---

**3.** In *Lewis,* the agent had been invited into the defendant's home to purchase marijuana. The agent maintained a false identity throughout

the two transactions which took place in the defendant's home.

correct to that extent. Virtually all cases are factually distinguishable, but that does not vitiate the underlying rule of law to be derived from *Lewis*. The Court clearly acknowledged the government's need to employ some secretive tactics to effectuate its enforcement of the law. Everyone agrees that Poteat served as an agent of the government in his dealings with Schuster. Schuster gave the apartment keys to Poteat for the specific purpose of obtaining the sample counterfeit $100 bill. By so doing, he *consented* to Poteat's entry into the residence and seizure of the incriminating evidence. "When his customer turn[ed] out to be a government agent, [Schuster] cannot, then, complain that his privacy [had] been invaded so long as the agent [did] [no] more than buy his wares." *Id.* at 213, 87 S.Ct. at 428 (Brennan, J., concurring).

The facts of this case, however, do require us to extend the consent given to one agent to yet another full-time Secret Service agent. We are somewhat surprised that the full-time agent went into the apartment under these circumstances. Clearly, the case would have been much simpler had Poteat entered the apartment, retrieved the $100 bill, and delivered it to Agent Bowron. Nevertheless, we do not find the peculiar facts of this case warrant the suppression of the $100 bill.

■ The government relies on wiretap cases to support its theory that Schuster relinquished his privacy interests to other agents by his original consent to Poteat's search. Under the "misplaced trust" theory, the government contends that once Schuster revealed the location of the counterfeit currency to Poteat and provided him with access to the apartment, he took the risk that his confidence might be misplaced and that other agents might become privy to the information revealed. *United States v. Shields*, 675 F.2d 1152, 1158 (11th Cir. 1982). That is precisely what happened.

Poteat revealed the information to Agent Bowron, who together with Poteat conducted the *authorized* search.

In wiretap cases, the Court has consistently upheld the admission of taped conversations against challenges by unsuspecting parties when only one member of the conversation has consented to it being recorded. *See, e.g., United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) and *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). In these cases, agents to whom consent to listen had *not* been given were able to overhear otherwise private conversations. Once the defendant relinquished his privacy interest in that conversation to the government informant, he could not thereafter complain about its broadcast to other agents. The Court has held the fourth amendment's protection simply cannot be stretched that far. We likewise decline to extend the fourth amendment beyond its intended scope to vitiate the consent given in this case.

We can perceive no valid reason to invalidate Agent Bowron's seizure of the counterfeit $100 bill. Poteat and Bowron entered the apartment *together*. At Poteat's direction,[4] Bowron went directly to the *specified* location, lifted the *identified* roll of toilet tissue, and retrieved the *designated* sample $100 bill.

"As this Court has held repeatedly, additional investigators or officials may ... enter a citizen's property after one official has already intruded legally."[5] *United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir. 1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978). The search and seizure which took place was precisely that consented to by the defendant. He must suffer the consequences of misplacing his trust in Poteat. Indeed, "[t]he risk of being ... betrayed by an

---

4. According to Poteat's testimony, he walked in with Agent Bowron and "[k]ind of directed which way to go." Record, vol. 4, at 14.

5. We note that not all circumstances warrant the application of this broad rule. As a recent

case explained "[t]hat one agent was a welcome visitor does not mean that any agent could enter the motel room without a warrant." *United States v. Bulman*, 667 F.2d 1374, 1384 n. 16 (11th Cir. 1982).

informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society." *Hoffa v. United States*, 385 U.S. 293, 303, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966) (quoting *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963)). In other words, "that's life." Because Poteat assumed the role of government agent, the consent given to him carried over to Agent Bowron to the extent that the scope of the search was limited to the consent given and Poteat accompanied the agent. "When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross*, —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

Because the District Court made its probable cause determination without the consideration of the counterfeit $100 bill, we remand the case for a new determination of probable cause. Consequently, we refrain from addressing the District Court's ruling on the validity of the arrest and the search incident to it. REVERSED and REMANDED.

JOHNSON, Circuit Judge, dissenting:

I dissent. The majority holds that consent given by defendant Schuster to Charles Poteat—an employee of Schuster at a hotel pool—to enter an apartment also authorized entry and search of the apartment by Secret Service Agent Bowron. I cannot join such a ruling.

Schuster's consent to a search was narrowly circumscribed: he authorized one individual, Poteat, to enter his girlfriend's apartment to find some counterfeit money. That he gave consent to Poteat to enter the apartment did not mean that he also consented to Bowron's entry. The narrowness of Schuster's consent delimits the extent of the legitimate expectation of privacy that he agreed to give up, which consisted solely of allowing one person whom he knew and employed to enter the apartment. That a person has relinquished a portion of his

legitimate expectation of privacy does not strip Fourth Amendment protections from his remaining expectation. *Walter v. United States*, 447 U.S. 649, 658–59, 100 S.Ct. 2395, 2402–2403, 65 L.Ed.2d 410 (1980) (plurality opinion by Stevens, J.); *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 328–29, 99 S.Ct. 2319, 2325–2326, 60 L.Ed.2d 920 (1979). The Secret Service agent who invaded the apartment without permission from Schuster violated legitimate expectations of privacy that were not lost when Schuster told his employee that he could enter the apartment. That invasion, without a warrant and under circumstances that did not render applicable some exception to the warrant requirement, abridged Schuster's Fourth Amendment rights. This Circuit recently has so concluded under substantially identical circumstances. *United States v. Bulman*, 667 F.2d 1374, 1384 n.16 (11th Cir. 1982).

The cases that the majority cites are not contrary to my position. In the wiretap cases, the Supreme Court has reasoned that an individual could, without violating the Fourth Amendment, write down for official use his conversations with a suspect. It found no constitutional difference between such activity and using equipment that transmits conversations to agents or recording devices located elsewhere. "If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks." *United States v. White*, 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *see also United States v. Caceres*, 440 U.S. 741, 750–51, 99 S.Ct. 1465, 1470–1471, 59 L.Ed.2d 733 (1979) (quoting *White*). The key element in the Court's analysis is that transmitting conversations to agents located elsewhere involves no greater invasion of privacy than occurs when a defendant is duped into talking to an undercover agent. Here, unlike the situation in the wiretap

**750**

cases, the search by agent Bowron resulted in an invasion of privacy greater than Schuster had sanctioned. *United States v. Brand*, 556 F.2d 1312, 1317 (5th Cir. 1977), *cert. denied*, 434 U.S. 1063, 98 S.Ct. 1237, 55 L.Ed.2d 763 (1978), the Circuit case on which the majority relies, is similarly distinguishable. In *Brand* police originally had legally entered a defendant's home because of a medical emergency. The Court ruled that a police officer entering the home after the emergency had ended had not violated the defendant's Fourth Amendment rights. "The amendment protects the citizen against invasion of privacy. Once that interest is invaded legally by an official of the State, the citizen has lost his reasonable expectation of privacy *to the extent of the invasion*", allowing other police to enter. *Id.* at 1317 (emphasis added). The Court added in a footnote that "[o]f course, the later officials must confine their intrusion to the scope of the original invasion unless a warrant or one of the exceptions to the warrant requirement justifies a more thorough or wide ranging search." *Id.* at 1317 n.9. Again the critical facet of the Court's reasoning was that the later police intrusion into an individual's expectations of privacy was no greater than an earlier, and legal, intrusion. The facts of this case differ from *Brand* because the extent of the permissible invasion of the defendant's privacy is limited not only by the area invaded but by *who* might invade that area. Since, as I noted above, Schuster gave permission to enter the apartment only to Poteat, the entry by agent Bowron expanded the scope of the privacy interests invaded and therefore was not made legal by the permission given to Poteat.

I would affirm the action of the district court in invalidating this warrantless search and seizure.