UNITED STATES of America, Plaintiff-Appellant,

v.

Edward Allen SCHUSTER, Defendant-Appellee.

No. 81–5478.

United States Court of Appeals, Eleventh Circuit.

Oct. 17, 1983.

Certiorari Denied Jan. 23, 1984. See 104 S.Ct. 1008.

Stanley Marcus, U.S. Atty., Linda Collins Hertz, Jon May, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellant.

Robyn Herman, Asst. Federal Public Defender, Miami, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HENDERSON, HATCHETT, ANDERSON and CLARK, Circuit Judges.

BY THE COURT:

The panel opinion in this case is reported at 684 F.2d 744 (11th Cir.1982). The matter was reheard by the Court *en banc.* Judges Roney, Hill, Fay, Vance, Henderson and Anderson adopt the majority opinion as published. By special concurrences, the Chief Judge, Judges Tjoflat and Clark join

in the result. The order granting the defendant's motion to suppress is reversed. The case is remanded for a new determination of probable cause, in which the trial court shall consider the evidence taken from the apartment.

REVERSED and REMANDED.

GODBOLD, Chief Judge, specially concurring.

I concur in the result on the ground that when the defendant surrendered his privacy to Poteat he also surrendered it with respect to anyone that Poteat might deal with, within the parameters of the surrender. Poteat could have entered the apartment himself, secured the phony bill, and then delivered it to a television commentator and would have violated no privacy right of Schuster. Schuster surrendered his privacy to Poteat and took his chances on what Poteat might do with the bill. Whether Poteat acted wrongly in letting the agent enter the apartment and himself pick up the bill might arguably, on tort grounds, make the government agent guilty of trespass and subject him to suit by the owner of the apartment. But it does not follow that the agent's possible trespass against the owner violated the privacy of Schuster in the bill because Schuster had surrendered that privacy to Poteat and necessarily to persons with whom Poteat dealt.

This seems to me a preferable rationale than a plenary rule that consent to one person operates as a consent to the whole world, or at least to the entire world of law enforcement officers.

TJOFLAT, Circuit Judge, specially concurring.

Although I agree with the majority's result reversing the district court, I write separately because I am troubled by the majority's characterization of the government's conduct as constituting a "search" within the meaning of the fourth amendment. In my view, the majority engages in a needless analysis of the consent issue, because there was no "search" or "seizure" in the first place. Thus, I concur in the majority's result based on my belief that no search or seizure occurred in this case.

In any claim of an unlawful search or seizure under the fourth amendment, the threshold inquiry is whether the government has infringed on any reasonable expectation of privacy of the defendant. If the defendant did not have a reasonable expectation of privacy in the place searched or in the item seized, no search or seizure within the meaning of the fourth amendment has occurred. *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967). Thus, the question presented is whether a person who tells an employee that he has counterfeit bills for sale, and who gives the employee the key to an apartment with directions to find a counterfeit bill to deliver to a prospective buyer, has a reasonable expectation that the employee will not cooperate with the government by bringing a government agent into the apartment to take the bill. Manifestly, the answer is no.

I can surmise no reason in either logic or policy why a court should label as "reasonable" a person's expectation that those to whom he divulges his criminal activities will either remain silent or actively take part in those activities. This is especially true in a case like this, in which the person who was told of the illegal activity, Poteat, had not been involved in the activity beforehand. There is certainly a reasonable possibility that one who is told of such activity will decide to tell law enforcement authorities about it and to cooperate with them. Indeed, most criminals recognize this possibility and go to great lengths to conceal their conduct from all except those involved in it. Thus, as a matter of pure common sense, when one engaged in criminal activity tells another about the activity and gives that person the key to an apartment with specific directions to obtain contraband for a prospective buyer, he has no reasonable expectation that that person will not allow a government agent to accompany him to the apartment, enter the apartment, and take the contraband described.

Second, as a matter of policy, I can discern no reason why a criminal's expectation that another will not divulge his criminal activity, and cooperate with the government in the manner described in this case, should be labeled "reasonable." There is no legitimate public policy in favor of protecting a criminal's subjective expectation that one who he *informs* of criminal activity will not cooperate with the government. On the contrary, there is a strong public policy in favor of encouraging cooperation with law enforcement authorities as a means of detecting, preventing, and solving crime. Therefore, the policies at stake are clearly in favor of a rule recognizing that no reasonable expectation of privacy exists when a criminal informs another about his criminal activity and gives that other person a key to an apartment in furtherance of that activity as in the circumstances of this case.

Of course, what should be considered a "reasonable" expectation of privacy in either logic or policy depends on the circumstances of the case. Thus, I stress what this case is not. First, this is not a case in which the area viewed exceeded the area specified in the directions the criminal gave to the informant. Had Agent Bowron searched the entire apartment, after Schuster had given Poteat the key to the apartment with instructions to proceed only to a specified area, a different case would be presented. It is at least arguable that Schuster's expectation that the entire apartment would not be searched is a more reasonable one. Similarly, this is not a case in which a key was given for purely innocent activity. Had Schuster given Poteat the key merely for Poteat to pick up a towel, for example, and had Poteat then inadvertently stumbled across contraband, a different situation would be presented. In the actual case before us, Schuster purposefully implicated Poteat in criminal activity when he told him that he had counterfeit bills available for sale. A person in Poteat's position understandably might want to extricate himself from the situation by cooperating with the police. In contrast, it is again at least arguable that one who merely stumbles across contraband will not

feel as great a desire to tell the police. Thus, a criminal who gives a key in furtherance of innocent activity may have a more reasonable claim to privacy than Schuster did here. I do not intimate any opinion on the cases hypothesized above other than to say they are distinguishable from the case at bar. On the facts of this case, however, it is clear that Schuster had no reasonable expectation of privacy.

In conclusion, I believe the majority has placed the cart before the horse in concluding that a valid consent was given without first determining whether there was a search or seizure in the first instance. Perhaps the majority errs in failing to recognize that the standard used to determine whether a search has occurred is an objective one—whether the defendant had a *reasonable* expectation of privacy in the place searched or in the item seized. Thus, Schuster's subjective expectation that Poteat would not turn out to be a government informant is relevant only insofar as that expectation was reasonable. Indeed, in every case in which one tells another of criminal activity a subjective expectation of privacy exists or else the speaker would not have told the listener about the activity. *Katz* holds that the fourth amendment protects only reasonable expectations of privacy. As a matter of both logic and policy, Schuster had no reasonable expectation that Poteat would not decide to cooperate with the government in the manner described above. On this basis, I concur in the majority's result.

CLARK, Circuit Judge, specially concurring.

I concur in the court's decision to reverse the decision of the district court. My concerns are the same as those of Chief Judge Godbold and Judge Tjoflat. The panel opinion speaks more broadly than required. The acquisition of the counterfeit bill, although by Bowron who accompanied Poteat, did not exceed the authority granted by Schuster to Poteat, was not illegal, and thus there is no Fourth Amendment violation. Regrettably, the panel opinion did not

**540**

limit the scope of its holding, as was done by the Supreme Court in a leading "consent" issue case, *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966):

> During neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business.

385 U.S. at 210, 87 S.Ct. at 427, 17 L.Ed.2d at 316. Clearly making the point that there would be a constitutional breach if a government agent or informer exceeded the authority implicit in his admission to the premises, the Court said:

> Petitioner argues that the Government overstepped the constitutional bounds in this case and places principal reliance on *Gouled v. United States,* 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). But a short statement of that case will demonstrate how misplaced his reliance is. There, a business acquaintance of the petitioner, acting under orders of federal officers, obtained entry into the petitioner's office by falsely representing that he intended only to pay a social visit. In the petitioner's absence, however, the intruder secretly ransacked the office and seized certain private papers of an incriminating nature. This Court had no difficulty concluding that the Fourth Amendment had been violated by the secret and general ransacking, notwithstanding that the initial intrusion was occasioned by a fraudulently obtained invitation rather than by force or stealth.

385 U.S. at 209–10, 87 S.Ct. at 426–27, 17 L.Ed.2d at 315. Thus, I agree with the reversal of the district court decision and agree generally with the panel opinion. However, the panel opinion does not clearly hold that any object other than the counterfeit bill obtained by Poteat or Bowron while in the apartment could not be admitted in evidence. I object to this ambiguity.

Parenthetically, one notes that in *Lewis, supra,* a dissent by Justice Brennan, joined by Justice Fortas, conveys the same viewpoint expressed by Judge Tjoflat in his special concurrence.

JOHNSON, Circuit Judge, dissenting, with whom KRAVITCH and HATCHETT, Circuit Judges, join.

I dissent from the action of the majority of this Court that reverses the district court's order granting the defendant's motion to suppress.[1] The panel opinion that was vacated by the action of this Court to consider this case en banc, reported at 684 F.2d 744, contains a fair recitation of the facts that prompted the order of the district court suppressing the fruits of the search. As the panel wrote:

> The defendant, Edward Allen Schuster, challenged the warrantless search of his girlfriend's apartment which produced evidence eventually leading to his arrest for possession and distribution of counterfeit currency, 18 U.S.C. §§ 472 and 473. He additionally contests the validity of his subsequent arrest, the probable cause for which was based in part on the evidence seized from his girlfriend's apartment.
>
> . . . .
>
> It was March 19, 1979, when Charles Poteat contacted the United States Secret Service in Miami, Florida, to inform them that the defendant, Edward Schuster, had told him that he had access to counterfeit $100 bills which would be available for sale. At that time Poteat worked for Schuster at a hotel pool. Agent Capaso, who had received Poteat's call, relayed the information to Agent Bowron, who subsequently became the focus of the consent issue. Agent Bowron met with Poteat that afternoon, arranged for Poteat to secure a sample of the counterfeit money and to tell Schuster that he had a buyer.

---

**1.** Judges Roney, Hill, Fay, Vance, Henderson and Anderson vote to adopt the now-vacated panel majority opinion as published. By special concurrences, Chief Judge Godbold and

Judges Tjoflat and Clark join in the result that reverses the district court's order suppressing the evidence.

The meeting was set. Under the watchful eyes, but too distant ears of another agent, Poteat received apartment keys from Schuster.[1] According to Poteat, Schuster had told him that a sample bill could be found under a roll of toilet paper in a closet at his girlfriend's apartment. Poteat and Agent Bowron went to the apartment. Poteat handed the keys to Bowron, who opened the door, proceeded to the disclosed location, and retrieved the sample $100 bill. Neither Poteat nor Bowron made any attempt to search the remaining areas of the apartment. The agents and Poteat subsequently returned to the hotel, where an agent witnessed Poteat return the keys to Schuster and pay him $30 in pre-recorded bills.

    [1] The apartment actually belonged to Schuster's girlfriend, but there is no dispute as to Schuster's standing to contest the search since he resided there.

Warrantless searches are per se unreasonable unless conducted pursuant to "a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Bowron's entry, in his capacity as a federal agent, into Schuster's apartment was in my judgment a search, conducted without a warrant or Schuster's consent. The evidence seized as a result of that search by this federal officer should be suppressed since the panel opinion has been vacated and since there is no majority opinion by this en banc court that attempts to validate this search or explain the reasons for reversing the district court's suppression order.

The basis of Judge Tjoflat's concurrence is that the intrusion into Schuster's apartment was not a search. To hold that the entry and subsequent actions by Bowron do not constitute a search flies in the face of all Fourth Amendment law. The definition of search applicable in this Circuit[2] was

enunciated by *Haerr v. United States,* 240 F.2d 533 (5th Cir.1957):

> A search implies an examination of one's premises or person with a view to the discovery of contraband or evidence of guilt to be used in prosecution of a criminal action. The term implies exploratory investigation or quest ... Mere observation, however, does not constitute a search.

*Id.* at 535. Bowron's actions constituted a search under *Haerr.* There was an intrusion, unauthorized and without warrant. Bowron examined the premises, albeit in a limited fashion, with the express purpose of discovering contraband—the counterfeit bill. He entered Schuster's home on an exploratory quest. Bowron engaged in more than "mere observation"; without Schuster's knowledge he unlocked and entered Schuster's home when Schuster was not there, opened a closet, and seized a counterfeit bill under a roll of toilet paper.

The case principally relied on by the government, *United States v. Haden,* 397 F.2d 460, 464 (7th Cir.1968), is significantly different from this case. In *Haden* the defendant had engaged in lengthy negotiations with an undercover agent in the belief that the agent would teach him how to manufacture heroin if the defendant supplied the necessary morphine sulfate tablets. After repeated meetings the defendant announced that he had obtained the tablets. The defendant and the agent met in a parking lot, and the defendant instructed the agent to go over to his car, lift the floor mat, and obtain the tablets while the defendant watched from the other side of the parking lot. The Seventh Circuit held that there was no search because the defendant had "waived the privacy of his car for the limited purpose of allowing the agent to retrieve the package." *Id.* at 465. The basis for the holding in *Haden* and in Judge Tjoflat's special concurrence was that no search occurred because no expectation of privacy was invaded.[3] This unusual

**2.** Decisions of the Fifth Circuit handed down prior to September 30, 1981, are binding precedent of this Court unless and until overruled or modified by this Court en banc. *Bonner v. City*

*of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**3.** *See United States v. Harley,* 486 F.Supp. 1348, 1354 (M.D.Fla.), *aff'd,* 678 F.2d 961 (5th

rationale differs from the reasoning used in consent-to-search cases, where it is assumed that a search occurred but the warrantless search is upheld when the defendant consented to the invasion of privacy. Thus, the dispositive facts in *Haden* were that the package was retrieved in the physical presence of the defendant and that the retrieval did not exceed the limits of the waiver to which he had consented. In contrast, a search took place here because the actions did not occur in the presence of Schuster. The single fact of Schuster's revealing the location of the bill to Poteat cannot support a finding that Bowron did not conduct a search. See *Faubion v. United States,* 424 F.2d 437, 440 (10th Cir.1970) (finding a search although defendant told officers about handguns in luggage, because "the luggage had to be invaded to seize the handguns"). Unlike the agent in *Haden,* Bowron had to invade Schuster's legitimate expectation of privacy in his home in order to seize the bill. It has long been recognized that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States District Court,* 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). The limited permission Schuster gave to his employee Poteat did not forfeit his remaining expectation of privacy in his home and its contents. A basic tenet of Fourth Amendment law is that a person may relinquish a portion of his legitimate expectation of privacy while retaining Fourth Amendment protections in his remaining expectation. *Walter v. United States,* 447 U.S. 649, 658–59, 100 S.Ct. 2395, 2402–03, 65 L.Ed.2d 410 (1980) (plurality opinion by Stevens, J.). Because the dispositive facts of *Haden* are not present here, its holding should not be extended to this case.

In a related argument, the government relies on two former Fifth Circuit cases to show that no search occurred because Schuster had no expectation of privacy in the counterfeit bill. *United States v. Bomengo,* 580 F.2d 173 (5th Cir.1978); *United States v. Brand,* 556 F.2d 1312 (5th Cir. 1977). These cases stand for the proposition that, once a defendant's privacy interest has been legally invaded, the defendant has lost his expectation of privacy to the extent of the invasion. However, these cases do not support a finding that no search occurred here because, as noted above, the invasion of privacy that took place was greater than the invasion sanctioned by Schuster. An examination of *Brand* and *Bomengo* reveals that the second entry in those cases was limited to the first invasion. Moreover, *Bomengo* and *Brand* demonstrate that a search warrant should have been obtained in this case before a search was conducted.

In *Bomengo* the court upheld a search where the warrant was based on a police view subsequent to a search conducted by private citizens. The crucial facts in *Bomengo* were that the view by the private citizen was not illegal and that it was a reasonably foreseeable invasion of privacy. Because the police view was "confined strictly to the scope of the initial discovery [and] [b]efore the silencers were seized a warrant was obtained," 580 F.2d at 176, the court concluded that the police view did not constitute a search.

In *Brand* an ambulance was called to the defendant's home because he had overdosed on drugs. A police officer arrived at the house as the defendant was being placed in the ambulance. Several police officers entered the home where they talked to the defendant's brother and observed drug paraphernalia in plain view in both the livingroom and the bedroom. These observations formed the basis of the affidavit that was used to obtain the search warrant. The court upheld the search based on the warrant. In doing so, however, it noted that the items listed in the affidavit which had been observed in the bedroom could not be used to assess the adequacy of the warrant since the medical emergency justified the officers' presence only in the living-

Cir.1980) (defining search as a visual examination or other means of gathering evidence

"which infringes upon a person's reasonable expectation of privacy").

room. The court's statement that "additional investigators or officials may ... enter a citizen's property after one official has already intruded legally," 556 F.2d at 1317, was tempered by its recognition that "the later officials must confine their intrusion to the scope of the original invasion." *Id.* at n. 9. Most importantly, the court concluded that, because the emergency justified a presence only in the livingroom, "Brand retained a reasonable expectation of privacy in other areas of the house." *Id.* at 1317.

The critical difference between *Brand* and *Bomengo* and this case is that a search warrant was obtained in both *Brand* and *Bomengo.* The primary purpose of the Fourth Amendment is that it requires that "the inferences which reasonable men draw from the evidence ... be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive business of ferreting out crime," *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436 (1948). The situation here would be vastly different if Bowron had accompanied Poteat to the apartment, observed the bill, and obtained a search warrant before seizing the bill.

The essential characteristics of a search are revealed by considering two cases where there was held to have been no search. In *United States v. Burns,* 624 F.2d 95 (10th Cir.), *cert. denied sub nom. Reynolds v. United States,* 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980), the court held that eavesdropping by an agent from a motel walkway, within earshot of the defendant's open motel room, did not constitute a search because "it is not a 'search' to observe that which occurs openly in public." *Id.* at 100. In *United States v. Pate,* 324 F.2d 934 (7th Cir.1962), the court held that, where officers went to the defendant's home and were voluntarily given a blood-stained shirt by the defendant's wife, no search occurred because the defendant's "privacy was not invaded ... there was no inspection or examination of his household." *Id.* at 935. Here, Bowron entered Schuster's home when no one was present and seized the bill. There was a search because his privacy was invaded.

Bowron's entry and activities in Schuster's apartment violated Schuster's reasonable expectation of privacy and were actions by a government agent for the specific purpose of obtaining evidence to be used in a criminal prosecution. Nothing could more clearly be a search.

The argument is made in the Chief Judge's special concurrence that Schuster surrendered his privacy to Poteat and that surrender "carried over" to the federal agent Bowron. My disagreement with that rationale was articulated in my dissent to the panel opinion and will be briefly reiterated here. The theory that a consent given to one person can be extended, or carried over, to another is indeed a novel proposition.

There is no evidence in the record reflecting that Poteat had the authority to give third-party consent to Bowron. I submit there is no legal support for such a proposition. The now-vacated majority opinion found support for this novel proposition in the wiretap cases, which uphold the admission of taped conversations between a defendant and an undercover agent when the defendant does not know that the conversations were being taped. *United States v. Caceres,* 440 U.S. 741, 750–51, 99 S.Ct. 1465, 1470–71, 59 L.Ed.2d 733; *United States v. White,* 401 U.S. 745, 751, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971); *United States v. Shields,* 675 F.2d 1152 (11th Cir.1982). In the wiretap cases, the Supreme Court reasoned that there is no constitutional difference between an individual writing down for official use his conversations with a suspect and the use of electronic equipment to transmit the conversations to agents located elsewhere. That reasoning is in turn predicated on the proposition stated in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), that "the risk of being ... betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society." *Id.* at 303, 87 S.Ct.

at 414. In a case decided the same day as *Hoffa,* the Supreme Court held that a government agent may enter a home to do business and that any items obtained are admissible in a subsequent trial. *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). The court noted that during the visits to the home the agent did not "see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business." 385 U.S. at 210, 87 S.Ct. at 427.

I believe that the significant factual differences between this case and *Lewis* preclude the application of the *Lewis* rule. Although under *Hoffa* and *Lewis* Schuster did take the risk that Poteat might reveal information to government agents, the principle enunciated in those cases[4] cannot support the further proposition that Schuster also risked that Poteat would admit a government agent into his home. To so hold means that Schuster not only took the risk that Poteat might deceive him as to his identity, but that Schuster's consent given to one person could be extended to anyone, including government officials, in effect opening his home to the world. Schuster was twice deceived. He did not know that his employee, Poteat, was acting as a government informer, and he did not know that by giving his consent to Poteat he was authorizing a search by Agent Bowron. While the first deception is permissible under *Hoffa* and *Lewis,* the search by Agent Bowron cannot be condoned because it significantly expanded the scope of the privacy interest Schuster consented to have invaded.

The proposition that consent is limited to the person to whom it is given is illustrated by a recent decision of this Court, *United States v. Bulman,* 667 F.2d 1374 (11th Cir. 1982). In *Bulman* the Court noted that if "one agent was a welcome visitor does not mean that any agent could enter the motel room without a warrant." *Id.* at 1384 n. 16. Accord *United States v. Glasby,* 576 F.2d

734 (7th Cir.), *cert. denied,* 439 U.S. 854, 99 S.Ct. 164, 58 L.Ed.2d 159 (1978) (consent held to be invalid because agents to whom consent given were not agents who entered apartment); *United States v. Lyons,* 706 F.2d 321, 325 (D.C.Cir.1983) (may admit certain guests without sacrificing right to expect that space will remain private).

The government points out that in *United States v. Rubio,* No. 80–1577 (9th Cir. April 14, 1983, WITHDRAWN, 703 F.2d 1124), the Ninth Circuit stated that consent cannot be qualified by the number of officers allowed to search. *Rubio* is not inconsistent with my position, because a greater number of officers does not necessarily constitute a greater invasion of privacy. Only a quantitative difference was at issue in *Rubio;* there is a qualitative difference between agreeing to have an employee enter one's home, even if he is a part-time undercover agent, and consenting to a search by a law enforcement official.

The now-vacated panel majority opinion used language from the recent Supreme Court opinion in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), to the effect that when a legitimate search is under way, "nice distinctions" must give way to prompt and efficient completion of the search. However, no legitimate search by Agent Bowron ever occurred, and nice distinctions are entirely necessary and proper in determining whether the zealous Agent Bowron conducted a search that should have been authorized by a neutral and detached magistrate. By holding that a consent to enter a private home may be transferred by the recipient of the consent to a government agent without the knowledge of the grantor we significantly extend the narrow delineation of the consent exception.

I therefore DISSENT from the action of a majority of this en banc court in its order reversing the district court's order suppressing the evidence obtained by Agent Bowron's search of Schuster's apartment.

---

**4.** In this connection, it should be noted that the principle stated in *Hoffa* and *Lewis* has been criticized on several grounds. See W. LaFave,

*Search and Seizure: A Treatise on the Fourth Amendment,* § 8.2 at 680–81 (1978) and authorities cited therein.